EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, and GEORGE H. McGOVERN, Executors of the last Will and Testament of Mary R. Latimer, late of Christiana Hundred, New Castle County and State of Delaware, deceased,

*vs.*

JAMES L. BANNING, ROBERT C. LATIMER, CASSANDRA M. S. FRANKLIN, KATHARINE STEWART, GEORGE H. McGOVERN, "HOMEOPATHIC HOSPITAL ASSOCIATION OF DELAWARE," a corporation of the State of Delaware, "HOME FOR AGED WOMEN," a corporation of the State of Delaware, "THE TRUSTEES OF THE HOME FOR FRIENDLESS AND DESTITUTE CHILDREN," a corporation of the State of Delaware, "THE WEST END READING ROOM," a corporation of the State of Delaware, "THE DELAWARE INDUSTRIAL SCHOOL FOR GIRLS," a corporation of the State of Delaware, "PEOPLES SETTLEMENT ASSOCIATION OF WILMINGTON, DELAWARE," a corporation of the State of Delaware, "THE TRUSTEES OF THE HANOVER STREET PRESBYTERIAN CHURCH IN WILMINGTON," a corporation of the State of Delaware, "VESTRY AND CHURCH WARDENS OF THE SWEDES LUTHERAN CHURCH CALLED TRINITY CHURCH IN THE BOROUGH OF WILMINGTON," a corporation of the State of Delaware, and SAMUEL SMALL.

*New Castle, Jan.* 15, 1930.

*Charles B. Evans* and *Robert H. Richards*, for complainants.

*Charles F. Richards*, for Robert C. Latimer, Cassandra M. S.

Franklin, Katharine Stewart, George H. McGovern, Homeopathic Hospital Association of Delaware, Home for Aged Women, The Trustees for the Home for Friendless and Destitute Children, The West End Reading Room, People's Settlement Association of Wilmington, Delaware, The Trustees of the Hanover Street Presbyterian Church in Wilmington.

*Charles F. Curley* and *Mason P. Morfit*, of Baltimore, Md., for James L. Banning.

*Charles M. Curtis*, for Vestry and Church Wardens of the Swedes Lutheran Church Called Trinity Church in the Borough of Wilmington.

*William Prickett*, for the Delaware Industrial School for Girls.

THE CHANCELLOR. This bill calls for an interpretation of the will and codicils thereto of Mary R. Latimer, who died January 23, 1929. Her last will and testament was dated May 5, 1922. There are four codicils thereto, dated respectively February 3, 1924, June 18, 1926, June 20, 1926, May 21, 1927.

The first question presented by the bill is a group question and concerns the identity of ten legatees. Nine of these legatees are charitable institutions and the tenth one is an individual named in the will as "Samuel Small, Cousin, York, Pa."

The institutional legatees named in the will or in the codicils as the case may be, and the parties claiming to have been intended to be thereby described by the testatrix, are respectively as follows:

"Homeopathic Hospital of Delaware," claimed to be Homeopathic Hospital Association of Delaware, a corporation of this State;

"Old Ladies Home," claimed to be Home for Aged Women, a corporation of this State, located in Wilmington, Delaware;

"Home for Friendless Children," claimed to be The Trustees of the Home for Friendless and Destitute Children, a corporation of this State, located in the City of Wilmington;

"West End Reading Room," claimed to be The West End Reading Room, a corporation of this State;

"Girls Reform School," claimed to be the Delaware Industrial School for Girls, a corporation of this State, located near the City of Wilmington;

"People's Settlement," claimed to be People's Settlement Association of Wilmington, Delaware, a corporation of this State located in the City of Wilmington;

"Hanover Presbyterian Church," claimed to be the Trustees of the Hanover Street Presbyterian Church in Wilmington, a corporation of this State;

"Old Swedes Church," claimed to be the Vestry and Church Wardens of the Swedes Lutheran Church Called Trinity in the Borough of Wilmington, a corporation of this State; and

"Homeopathic Hospital, a corporation of the State of Delaware," claimed to be Homeopathic Hospital Association of Delaware, a corporation of this State.

The testatrix was a resident near the City of Wilmington where, or in the immediate vicinity of which, all the claimants just referred to were located. The bequests to the institutions named by her were all charitable bequests. In the case of The West End Reading Room the error of the testatrix in describing it with complete accuracy consisted only in the omission of the word "The," which appears in its corporate title. With respect to the other eight institutions, the inaccuracy of her descriptions is graduated in the degree of its variation from the exact corporate names of the claimants. Proof has been adduced which shows that if the claimants be not entitled to the respective legacies to which they assert a right, no other objects of the testatrix's bounty can be found which reasonably satisfy her designating language, and the legacies would accordingly completely fail. Furthermore, it is in proof that in every one of the nine cases she used language in describing the claiming beneficiary which coincides with the name by which the institution was popularly known and by which it was familiarly referred to in the community. This is so in every case. The most glaring variation in name between the legatee and the claimant occurs in connection with the legacy to Old Swedes Church. Yet in that case, the identity of the claimant with the legatee cannot be doubted, for the "Vestry and Church Wardens of the Swedes Lutheran Church Called Trinity Church in the Borough of Wilmington" is almost everywhere known as "Old Swedes Church."

In *Doughten v. Vandever*, 5 *Del. Ch.* 51, this court held that parol evidence was proper to be resorted to for the identification of the objects of a testator's charitable benefactions and particularly observed that the name by which a claimant-institution was commonly called may be appropriately referred to for ascertainment of the identity of the charity intended to be referred to by the testator.

The undisputed evidence in this case shows clearly that each of the nine claimants to the charitable bequests claimed by them is entitled to a decree establishing their respective claims. The circumstance that no claimant is confronted with a rival contender is strongly corroborative of the fact that in the community where the testatrix lived for so many years it is well understood that her descriptive language in each bequest is applicable to one and only one institution, the institution in each case being the one that is now asserting its identity with the object intended to be designated by the descriptive language of the testatrix.

On this branch of the case the decree will be in favor of the respective institutional claimants.

There is one other bequest that requires a finding upon the point of identification of the person intended. I refer to the individual legacy to "Samuel Small, Cousin, York, Pa., five thousand dollars."

At the time of the execution of the will of Miss Latimer as well as at the time of the execution of the last codicil thereto, there were three Samuel Smalls living at York, Pa., a father, a son and a grandson, born respectively in 1837, 1874 and 1917. All were cousins of the testatrix, but of course of different degrees. Samuel Small the father died in 1927 at the age of eighty years. He was the son of Philip Albright Small and Sarah Small, nee Latimer. He was a close cotemporary of the testatrix who herself died in 1929 at the age of over ninety-five. The proof indicates that it was this Samuel Small who was the person intended by the testatrix to take the legacy here under discussion. She referred to him in conversation as her cousin and he called upon her on at least one occasion and corresponded with her secretary. He, as stated, died in 1927, pre-deceasing the testatrix. His son

Samuel Small is now living at York, Pa. Samuel Small is a party to this suit. The son, Samuel Small, though he had notice of the suit has not seen fit to present any claim to the legacy. His letters, two of which are in evidence, refrain from asserting a claim; the last one in fact discloses such a complete indifference to the matter that the conclusion is inescapable that he does not consider himself as the person intended by the testatrix as her legatee. Under the affirmative proof, coupled with this indifference on the part of the son, I conclude that Samuel Small, the father, and not the son, was the one referred to by the testatrix in the bestowing of this legacy. It is hardly to be supposed that the grandson (twelve years of age) could have been intended.

Samuel Small, the father, having predeceased the testatrix, the legacy to him lapsed. The decree will be framed accordingly when it deals with the legacy to him.

This brings us to the second question presented by the bill. This question deals with language found in the will and in the first codicil by which the testatrix made provision for James L. Banning. The language of the will is as follows:

"I give and bequeath legacies as follows, on all of which I authorize my Executors to pay all taxes from my estate and be free from charge to all * * * to James L. Banning, Jr., Cousin (One Hundred Thousand Dollars) Fifty Thousand Dollars."

On the margin, in the handwriting of the testatrix the following words were written in ink—"The correction of fifty thousand dollars made before signing. M. R. Latimer."

The language of the first codicil, which, as well as the will, was a holographic one written entirely in ink, is as follows:

"Whereas I have by my said will devised unto James L. Banning the real estate known as the Woodstock farm. * * * Now it is my will and I do hereby give and devise the said Woodstock farm * * * to my cousins Redmond Stewart, Jr. and W. Latimer Stewart * * * In my said will I have by mistake (and which corrected by lead pencil marks) bequeathed a legacy to James L. Banning of Two hundred and Fifty Thousand Dollars which was intended to be Fifty Thousand dollars, I now will and bequeath to James L. Banning Fifty Thousand Dollars. I now revoke the words Two Hundred and Fifty Thousand dollars written by mistake in my will. * * * "

It is contended by James L. Banning that he is entitled to

receive two legacies of fifty thousand dollars each, one by virtue of the will and the other by virtue of the codicil. The question therefore is whether the fifty thousand dollars mentioned in the codicil is cumulative upon the one mentioned in the will.

The principles of law governing the relation of a codicil to a will are well settled. These are, so far as this case calls for their enunciation, as follows: In the first place a codicil, though published later than the will, is nevertheless as much a part thereof as if it had been incorporated in the document at the time of its original publication. The will and the codicil are to be taken and construed together as parts of one and the same instrument, *Lodge, Ex'r., v. Grubb, et al.*, 15 *Del. Ch.* 12, 130 *A*. 28. "In order that a codicil shall operate as a revocation of any part of a will, in the absence of express words to that effect, its provision must be so inconsistent with those of the will as to exclude any other legitimate inference than that of a change in the testator's intention. They are both supposed to be made and executed with the same solemnity and deliberation, and therefore, both are entitled to the same degree of consideration." *Bringhurst v. Orth, et al.*, 7 *Del. Ch.* 178, 44 *A*. 783, 784.

It is a further rule of construction that where two legacies are given simpliciter to the same legatee, the one by the will and the other by a codicil, the latter is regarded as cumulative whether its amount be equal or unequal to the former. *Williams on Executors*, (7th Ed.) *p*. 603. The reason for this rule is stated by Vice Chancellor Sir James Wigram in *Lee v. Paine*, 4 *Hare* 201, to rest on the consideration that the legacies being given by two instruments, they are in law two, unless something can be found in the construction of the second instrument or by presumption of law which negatives the effect of two separate gifts; and if such negativing effect be not discoverable, it would manifestly contradict the effect of one or the other instrument to deny to the legatee the enjoyment of one of the legacies.

Relying on these principles, the solicitor for James L. Banning argues that the legacy to him of fifty thousand dollars in the codicil must be taken as cumulative upon the legacy of the same amount to him found in the will.

I do not understand the solicitor for the residuary legatees

under the will to controvert the legal principles thus advanced in behalf of Banning. It is insisted, however, and correctly so it would seem, that there is no presumption in the strict sense of the word in favor of the cumulation of the second legacy upon the first. Instead of the rule's embodying a presumption of law which is capable of being rebutted, it is more proper to speak of it as stating a "method," using the language of Mr. Page (*Section* 1382 of the *2nd Ed.* of his work *on Wills*), "in which the court is accustomed to deal with given states of evidence and of the inferences of fact which the court regularly draws," or, as it is put by Sir James Wigram in the case just cited, it is "an inference in favor of a given construction of particular words."

The inference, however, is not an unyielding one. It will give way to anything which shows the intent of the testator to have been of contrary effect. Such intent must, however, be disclosed by the words of the instrument itself. It is so recognized in the case before Vice Chancellor Wigram and in the citation from Page. Accordingly it is stated by *Underhill* in his *Law of Wills*, (*1st Ed.*) § 420, that "the presumption that legacies given in different instruments to the same persons are cumulative may be overturned by the intention shown by implication in the second instrument. If it shall appear that the testator intended to revoke the first legacy or if it appears that he was simply explaining the provisions of the first legacy * * * the mere repetition of the legacy will not make it cumulative."

To like effect is *Theobald* in his work on *Wills*, (*7th Ed.*) *page* 159, where he says:

"It may, however, appear that the gift by the latter instrument is intended to be substitutional. This may be shown:

"(b) If the second gift can be looked upon as explanatory of the prior gift. *Moggridge v. Thackwell*, 3 *Ves. Jr.*, 473.

"(c) If by a codicil the testator revokes a portion of a prior gift and then repeats the rest, so that the repetition may be explained as *ex abundanti cautela.*"

The authority of *Williams on Executors*, (*9th Ed.*) *p*. 604, likewise supports the proposition that the legacies are not cumulative where evidence is found in the codicil itself that the second gift was intended by the testator as a substitution for the first,

as must be the case where the later instrument was made for the purpose of explaining or better ascertaining the legacy bequeathed by the earlier one.

The principles just stated are so plainly in harmony with reason as to need no elaboration.

I turn, therefore, to the will and codicil in question to discover whether or not there is evidence *intra* the instruments themselves to indicate that the usual construction applicable in the simple case of two legacies to the same person which favors a cumulation of one upon the other, should give way in favor of the idea that the testatrix intended only one legacy to be given.

The testatrix made a number of wills prior to the one dated May 5, 1922, which has been proved as her last will and testament. The first codicil dated February 3, 1924, which gives rise to the present question, has been proved and allowed by the Register of Wills as a part of the will so proved as the last one. It is apparent however that in writing the codicil the testatrix was laboring under a confusion of mind concerning the legacy which she had bequeathed to James L. Banning in the last will and testament into which the codicil must be taken as having been intended to be inserted. This is manifest for two reasons: First, because the codicil refers to a gift of two hundred and fifty thousand dollars to him which was intended to be fifty thousand dollars, whereas the last will shows the original legacy to have been only one hundred thousand dollars, which was actually changed to fifty thousand dollars; and, second, the codicil speaks of a correction of the will by lead pencil marks, whereas the correction in the last will is in ink.

One of two suppositions is therefore true—either there was an earlier will in which two hundred and fifty thousand dollars was by mistake given to James L. Banning when only fifty thousand dollars was intended and a correction by lead pencil marks was made thereon, and the testatrix was for the moment under the impression that such will was the last one; or, if there was no such earlier will, the testatrix was laboring under a strangely perplexed recollection concerning the actual state of facts which her last will would on mere inspection disclose. Which of these

two hypotheses is the true one, it is of course impossible to say. The former would appear to be the more reasonable.

It does not seem to be necessary for a decision of this case to adopt either hypothesis as the true one. The significant thing which a mere casual reading of the codicil immediately thrusts upon the attention is that the testatrix was under the impression that her last will and testament had expressed a mistaken intent with respect to the Banning legacy which she had, at least in her apprehensions if not in her belief, ineffectively corrected. To make sure that her real intent as attempted theretofore to be expressed in her will should be removed entirely from all peradventure of doubt, she wrote the codicil in explanation of or in substitution for the will's provision. It is to be noted that the language of the codicil makes the statement that the two hundred and fifty thousand dollar gift was a mistake corrected by lead pencil marks. What does that mean? Does it mean that the two hundred and fifty thousand dollar figure was simply lined out and nothing substituted therefor? Or does it mean that fifty thousand dollars was also written in with a pencil? We have no means of knowing. All that her language discloses is that she thought that the will, as she recollected it to be, gave two hundred and fifty thousand dollars to Mr. Banning, that this was a mistake indicated by lead pencil marks, that she had wanted him to take fifty thousand dollars under the will, and now she gave him that sum revoking the erroneous bequest of two hundred and fifty thousand dollars. She evidently did not wish her real intent with respect to the legacy to rest for its disclosure upon lead pencil markings upon her will and was taking the wisely precautionary measure of clarifying the matter by way of a codicil provision.

I cannot see that it is of moment that the last will contains no reference to two hundred and fifty thousand dollars as the legacy to Mr. Banning and contains no lead pencil markings. The significant thing is that she thought it did. Her last will in fact gave to Mr. Banning fifty thousand dollars, which is the exact sum she intended him to have. Her codicil goes on the assumption that the will as drawn had left the amount of the legacy in confusion. Having that thought in mind, she under-

took to make it plain. If her last will had in fact contained the figure of two hundred and fifty thousand dollars to Mr. Banning and lead pencil corrections had been made thereon, it would seem clear that the codicil would have to be read simply as an explanatory or clarifying document. Her thinking of the will as in that condition is illuminative of her intent in drawing the codicil and should control in its interpretation. Of course if she had recollected that in her last will she had in fact made it plain that she gave fifty thousand dollars to Mr. Banning, there would have been no occasion for clarification in the codicil. The whole difficulty has arisen by reason of confusion in the mind of the testatrix as to the actual provision of her latest will. All that the codicil does is to explain what the testatrix erroneously thought she had imperfectly indicated.

The solicitors for Mr. Banning strenuously urge the point of view that the only provision in any will, whether it be the one that was probated as the last will or in any prior will, which the codicil revokes is a provision giving to Mr. Banning two hundred and fifty thousand dollars, that the legacy of fifty thousand dollars in the last will is left undisturbed by the codicil's language, that there is also in the codicil a specific bequest of a legacy of fifty thousand dollars, and that the case is therefore one where two legacies are given simpliciter, one in a will and one in a codicil, in which case the two legacies are to be regarded, under the general rule of construction hereinbefore stated, as independent gifts and therefore cumulative.

This point of view is not acceptable. It appears to me to be a too formal deduction from a purely technical statement of the facts. It disregards the coloring matter which inheres in the entire language of the testatrix and in the peculiar setting of facts, and which indicates that it was the intent of the testatrix by the codicil provision to make certain that the legacy to Mr. Banning which the will gave to him should be understood to have been intended as fifty thousand dollars. That being so, the codicil gave no additional legacy.

It was further argued that the codicil revoked a devise of the farm known as Woodstock which by the will had been given

to Mr. Banning, and that the testatrix must have meant in the codicil to bestow upon him another legacy, viz., the fifty thousand dollars therein mentioned, in lieu thereof. There is nothing, however, in the codicil upon which to base such a suggestion. What "Woodstock" was worth does not appear. It is therefore impossible to say whether the bestowing of the fifty thousand dollar legacy upon Mr. Banning was an approximate adjustment to him of the loss of the devise of "Woodstock" or not. Furthermore, in a later codicil the testatrix restored "Woodstock" to Mr. Banning. If she had intended to give him a legacy of fifty thousand dollars in compensation for taking "Woodstock" away from him in the first codicil, why did she not, when she re-devised it to him in the later codicil, revoke the allegedly compensatory legacy? I suppose the suggested answer would be that she may have altered the extent of her testamentary intent towards him in the interval between the two codicils. That is true. But a discussion of this point is hardly profitable, for it deals entirely with speculation. I may say, however, before leaving this point, that the various alterations in the will made by the codicils do not disclose any scheme or plan on the part of the testatrix to make good by a new benefaction any revocation which the testatrix made of other gifts bestowed upon others of her beneficiaries. Indeed the opposite appears.

In the light of the foregoing, the conclusion follows that the legacy mentioned in the codicil is not cumulative upon the one mentioned in the will, but is in substitution therefor.

One other question remains to be considered. The legacy of fifty thousand dollars given by the will was given free from all taxes. The one given by the codicil in substitution therefor is given without mention of taxes. The question is—Should the executors pay the legacy in full without deduction for inheritance taxes, or should such taxes be taken out? The executors will be instructed to pay over the legacy in full free and discharged from all taxes. The governing principle is that where a substitutional legacy is bestowed, it will be subject to the same incidents as is the original. *Underhill on Wills*, (1st Ed.) *p.* 573; *Theobald on Wills*, (7th Ed.) *p.* 161; *Williams on Executors*, (9th Ed.) *p.* 609. This principle relieves the fifty thousand dollar

legacy given by the codicil from the payment of the taxes which the original legacy was exonerated by the will from paying.

Decree in accordance with the foregoing.

NOTE.—On appeal by James L. Banning the decree of the Chancellor was affirmed by the Supreme Court. See *post p.* 387.