THE MILFORD TRUST COMPANY, a corporation of the State of Delaware, Executor under the Last Will and Testament of Louder N. Hearn, deceased,

*vs.*

MILFORD MEMORIAL HOSPITAL, INC., a corporation of the State of Delaware, the name of which was formerly "THE MILFORD EMERGENCY HOSPITAL, INCORPORATED"; THE MILFORD TRUST COMPANY, a corporation of the State of Delaware, trustee under the Last Will and Testament of LOUDER N. HEARN, deceased, of the "MILFORD EMERGENCY HOSPITAL FUND"; and THE MILFORD TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Last Will and Testament of Louder N. Hearn, deceased, of the "HEARN EDUCATIONAL FUND".

*Kent, Feb.* 20, 1939.

*Howard E. Lynch, Jr.,* for complainant.

*Caleb S. Layton,* of Richards, Layton & Finger, for Milford Trust Company, Trustee for Milford Memorial Hospital, Inc. (formerly The Milford Emergency Hospital, Incorporated).

*Henry Ridgely,* for Milford Trust Company, Trustee for Hearn Educational Fund.

THE CHANCELLOR: The complainant's bill asks for instructions with respect to the disposition of certain funds belonging to the estate of Louder N. Hearn, late of the Town of Milford, deceased.

Mr. Hearn died on December 13th, 1937. In his will, he devised and bequeathed the residue of his estate to "The Milford Trust Company," in trust, however, and with the express direction that at the death of his mother, Alice Hearn, the whole of the said trust fund should "then be equally divided into two separate trust funds." The first of these funds was to "be known as The Milford Emergency Hospital Fund"; and the testator, also, directed that the income from that fund should "be paid to the said Milford Emergency Hospital and used to the best advantage in the maintenance and support of said hospital."

Mr. Hearn's will further provided "should the said hospital for any reason cease to be operated as a hospital, then I direct that the income from this trust fund be paid out as directed under second trust fund hereinafter mentioned."

Alice Hearn, the testator's mother, died prior to his death; and the second trust fund, referred to in his will, was the "Hearn Educational Fund."

At the time of the death of Mr. Hearn, "The Milford Emergency Hospital, Incorporated" was the only hospital being operated in the Town of Milford, and it is not denied that by "the said Milford Emergency Hospital," the testator intended to refer to that hospital. See *Equitable Trust Company v. Banning,* 17 *Del. Ch.* 95, 149 *A.* 432.

The real controversy, therefore, is between the two named beneficiaries in the trust funds created by Mr. Hearn's will; and the precise question to be determined is whether "The Milford Emergency Hospital, Incorporated" has ceased to operate as a hospital, and has, therefore, lost its rights under the testator's will.

It must be conceded that even prior to the death of Mr. Hearn, the corporation, known as "The Milford Emergency Hospital, Incorporated," had intended, at some future date, to finally close its doors and to end its operations as a hospital. This would seem to be shown by numerous circumstances, including the organization of "The Milford Memorial Hospital, Inc." on August 12th, 1936, for the purpose of owning and maintaining a new and improved hospital in the Town of Milford; the conveyance by "The Milford Emergency Hospital, Incorporated" of the lands and premises owned by it in Causey's Addition to South Milford to the new hospital corporation on February 20th, 1937; the subsequent erection of a new hospital building on that land, and by the fact that it was admitted at the hearing on the facts that some contributors to the funds raised for the erection of the new hospital building had definitely refused to give anything to the old Milford Emergency Hospital, Incorporated. But it cannot be said that that hospital had ceased to operate as such at the time of Mr. Hearn's death, and it is not contended that it had.

Mr. Hearn's will provides, however, that if the Milford Emergency Hospital "should for any reason cease to be operated as a hospital," the trust fund created for its benefit shall be used for other specified purposes. If, therefore, "The Milford Emergency Hospital, Incorporated" has ceased to operate as such at any time since the testator's death, the purpose of that trust has failed, and the Educational Fund is entitled to the whole of the income on the Hearn estate. *McBride v. Murphy*, 14 *Del. Ch.* 242, 124 *A.* 798.

Under the provisions of the will, the time for the enjoyment by the Milford Emergency Hospital of the income on the hospital fund was merely postponed until after the death of the testator's mother, and there is nothing, whatever, to indicate that a mere contingent, rather than a vested interest, was intended. *Blackstone v. Chandler*, 15 *Del. Ch.* 1, 130 *A.* 34. But if the limitation over for the benefit of the Hearn Educational Fund be considered as a condition subsequent "* * * a subsequent condition operates upon an estate already created and vested and renders it liable to be defeated." *Shockley v. Parvis*, 4 *Houst.* 568.

The rule is, also, well established "that when maintenance or use is a part of a condition, there must be such neglect to maintain as to indicate an intention not to comply to constitute a breach of the condition." *Thompson on Wills*, § 542; see, also, *In re Jordan's Estate*, 310 *Pa.* 401, 165 *A.* 652.

The present corporate existence of "The Milford Emergency Hospital, Incorporated," though under another name, is conceded, but the real question to be determined is whether, for a period on and after about April 13th, 1938, its hospital was, in fact, operated by another corporate body. The new hospital building, then owned by "Milford Memorial Hospital, Inc.," was completed shortly after that date, and on or about that time all of the bed patients in the old hospital building were transferred to the new building, and thereafter no such patients were admitted to the old hospital. Some of the equipment belonging to "The Milford Emergency Hospital, Incorporated" was, also, moved to the new hospital building in South Milford, but the title to such equipment was not transferred to the new corporation. After about April 13th, 1938, the medical staff and nurses connected with the old hospital corporation performed such duties in the new building as were required of them in the conduct of a hospital, but the facts do not clearly indicate that the old hospital corporation ceased to function as such

after about that date. Even after the removal of the bed patients to the new hospital building, all laboratory and dispensary work in connection with the operation of the hospital was still carried on in the old hospital building, in North Milford. All medical bills and hospital charges for the care of the patients in the new building were sent out in the name of the old hospital corporation until the practical consolidation of the two corporations was finally consummated. The nurses' home, belonging to the old hospital corporation, in North Milford, is still used in connection with the operation of a hospital, though in the new building.

At the time of the removal of the bed patients to the new building, counsel for the old hospital corporation was still working on a plan for the practical consolidation of the two corporations, and, before such removal, was consulted as to its possible effect on the rights of the old Emergency Hospital corporation under the Hearn will.

Some time in the summer of 1938, the new hospital building, and the land upon which it was erected, were conveyed by the Milford Memorial Hospital, Inc. to the old Emergency Hospital corporation. The new corporation was then dissolved, and the name of "The Milford Emergency Hospital, Incorporated" was changed to "Milford Memorial Hospital, Inc." The present hospital corporation, the old corporation, assumed all of the debts of the new and dissolved corporation, which had erected the new hospital building. The old hospital building, in North Milford, was sold, and the proceeds applied to the payment of the debts created by the new corporation before its dissolution. Other facts, in connection with the practical consolidation of the two hospital corporations, will appear in the statement of facts preceding this opinion.

It cannot be contended that the bequest to the Milford Emergency Hospital was intended to apply to any particular building used by it. It was a gift to that hospital, and in furtherance of its purpose to operate as such. Even if the

Emergency Hospital corporation had sold its building, or torn it down, it would not constitute a cessation of activities by that institution, if the corporation still intended, in good faith, to thereafter acquire new facilities to carry out the purposes of its organization. See *In re Jordan's Estate,* 310 *Pa.* 401, 165 *A.* 652.

My conclusion, therefore, is that "The Milford Emergency Hospital, Incorporated," the name of which is now "Milford Memorial Hospital, Inc.," has never ceased to operate a hospital at Milford, and is, therefore, entitled to receive the income on the trust fund created for its benefit by Mr. Hearn's will.

Let a decree be prepared in accordance with this opinion.