ROBERT R. P. BRADFORD and WILLARD HALL PORTER, JR., Surviving Trustees under the Last Will and Testament of Junia K. Dwight, Deceased,

*.vs.*

LUCINDA H. B. SHAKESPEARE, FRANKLIN H. SHAKESPEARE, WILLIAM BRADFORD, JR., and LUCINDA H. CULBRETH.

*New Castle, Oct.* 19, 1939.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, and *Shippen Lewis,* of Philadelphia, Pa., for complainants.

*Thomas Herlihy, Jr.,* (*Theodore S. Hope, Jr.,* and *David F. Rawson,* of Donovan, Leisure, Newton & Lumbard, both of New York City, of counsel), for William Bradford, Jr.

*Thomas Herlihy, Jr.,* and *Ernest V. Keith,* for Lucinda H. B. Shakespeare and Franklin H. Shakespeare.

THE CHANCELLOR: This is a bill to construe the last will and testament of Junia K. Dwight, late of New Castle County, deceased. The three questions on which instructions are requested are:

1. To whom is the income payable on the $10,000 trust fund created for the benefit of Willard Hall Bradford during his lifetime by the "Fifth" section of Item IX of Mrs. Dwight's will?

2. To whom is the income payable on the general trust primarily created for the benefit of the children of Lucinda H. Bradford, a deceased sister of the testatrix; and are Lucinda H. B. Shakespeare and William Bradford, Jr., two of the defendants, entitled to participate in that income during their lives?

3. What powers have the trustees, the complainants, in investing, changing investments and managing the trust estate, pursuant to the provisions of Items IX and X of Mrs. Dwight's will?

After providing in her will for certain specific legacies, the testatrix bequeathed and devised all the rest, residue and

remainder of her estate upon certain trusts therein mentioned. The material provisions of that part of her will are as follows:

"Item IX. I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, of whatever kind and wherever situated, to my executors hereinafter named, to have and to hold the same to them, their heirs and assigns, forever, In Trust, nevertheless, for the following uses and purposes, and for no other use or purpose whatever, that is to say: To manage, sell, let and demise any real estate of which I may die seized, and to keep my personal property of which I may die possessed, or in which I may be then interested, and over which I may have any testamentary control or disposition, properly and securely invested, according to their best judgment and discretion, retaining all or any part of the securities or properties in which my said estate is now invested, or to sell, change or reinvest the same, or any part thereof, from time to time as may to them seem wise, expedient for and advantageous to my estate, not meaning or intending to limit my said executors in the exercise of their discretion to such investments as are known as legal investments, and to collect the rents, interest and income thereof, however invested, as the same may from time to time accrue, and out of the same—"

The will is quite voluminous, and somewhat involved, and that provision is followed by various provisions relating to the distribution of both the income on the main trust fund and on certain specified portions of it, and by provisions relating to the ultimate disposition of the corpus of the entire fund.

In the "Fifth" section of Item IX, the testatrix gave to her nephew, Willard Hall Bradford, for life "the yearly income of or interest on Ten Thousand Dollars ($10,000.) * * *." Willard Hall Bradford survived the testatrix, but died March 29th, 1933, leaving no child or grandchild to survive him; so the further disposition of the income on that fund is provided for in the "Seventh" section of Item IX. That section provides:

"But if either of my said nephews, William Bradford, Robert R. P. Bardford, Willard Hall Bradford, or my said niece, Lucinda H. Culbreth, should die in my lifetime, without leaving any children, or grandchildren living at the time of my death, or having survived me, either of my said nephews or my said niece should thereafter die without leaving such issue

him or her surviving, to divide and pay the yearly income of or interest on the sum of Ten Thousand Dollars ($10,000), which was to have been paid in semi-annual payments to such nephew or niece so dying, as directed in the foregoing third, fourth, fifth and sixth sections of this Item IX of my will respectively, to and among those of my said nephews and niece so me surviving, or who may survive those of them so surviving me, and afterwards dying leaving no such issue him or her surviving respectively, in equal parts or portions for and during the whole term of the natural lives of each of them respectively * * *."

All of the Bradford nephews and niece, including Willard Hall Bradford, survived the testatrix, but all of them are now dead except Lucinda H. Culbreth. Robert R. P. Bradford was living when this bill was filed, but it is conceded that he has since died. William Bradford is the only one who left issue. He died in 1917 and, therefore, some years before the death of Willard Hall Bradford. The section in question, in part, provides:

"* * * or having survived me, either of my said nephews or my said niece should thereafter die without leaving such issue him or her surviving, to divide and pay the yearly income * * * on the Ten Thousand Dollars ($10,000) * * * to and among those of my said nephews and niece so me surviving, or who may survive those of them so surviving me and afterwards dying leaving no such issue him or her surviving."

The latter part of this quotation is merely a clause providing that the income shall go to the ultimate survivors of the nephews and niece in case the life beneficiary of a $10,000 fund should die without issue. It is, therefore, apparent that Lucinda H. Culbreth, being the sole survivor of Mrs. Bradford's children, is entitled to the income on the $10,000 fund in question during her lifetime. The same section further provides: "The payments of such additional income, and the distribution of the principal producing it, to be made in accordance with and subject to the limitations, restrictions and conditions stated as to the original provisions in each case hereinbefore made as aforesaid"; but that provision cannot affect this conclusion. The precise meaning of that part of it, relating to the final distribution of principal, is not now before this court, and need not be considered.

The "Eleventh" section of Item IX directs the trustees to pay "all the balance of the yearly income on the rest, residue and remainder of my said estate" to Harriet C. Prevost and Jane B. Porter, the two surviving sisters of the testatrix, during their joint lives, and to the survivor of them during her lifetime. On the death of the survivor of the two sisters, the trustees are also directed to pay certain pecuniary legacies and the income on certain portions of the corpus of the trust estate to specified persons, but the important provisions are in the "Twenty-first" section of Item IX. That section, among other things, provides for the disposition of the income from the main portion of the trust on the termination of the life estates given the two surviving sisters of Mrs. Dwight, and a one-half part of such income is primarily payable to the children of Willard Hall Porter, a deceased brother of the testatrix, and the other one-half part is primarily payable to the children of Lucinda H. Bradford, a deceased sister.

"Secondly" of the "Twenty-first" section of Item IX directs the trustees:

"To pay the balance of the interest or income so collected, being one-half of all accruing upon this portion of my residuary estate, to and among all the children of my sister, Lucinda H. Bradford, deceased, or the children or grandchildren of said children, whichever may be living at the time of my death, and may survive the survivor of my sisters as provided in the foregoing sections of this Item IX of my will, in equal portions, share and share alike, semi-annually for and during the whole term of their respective natural lives, the distribution in the case of such issue to be made per stirpes and not per capita, the issue taking only by right of representation of their respective parents; * * *."

Before considering the provisions of this section, it may, perhaps, be permissible to emphasize that, because of other sections of the will, no income could be paid to any of the donees therein named until the death of the survivor of the two surviving sisters of Mrs. Dwight. Bearing that in mind, the question to be determined is whether the class of donees is fixed by this section as of the time of Mrs. Dwight's death, or at the time of the death of the survivor

of her sisters. Jane B. Porter, the survivor of them, died October 28th, 1928, and, in determining to whom income payments were to be made after that date, the material phrase in this section to be considered is *"or the children or grandchildren of said children, whichever may be living at the time of my death, and may survive the survivor of my sisters as provided in the foregoing sections of this Item IX of my will."* William Bradford, one of the sons of Lucinda H. Bradford, deceased, and a nephew of the testatrix, survived her, but died before the death of Jane B. Porter, and, therefore, never actually enjoyed any of the income from the trust fund created by Mrs. Dwight's will. Lucinda H. B. Shakespeare and William Bradford, Jr., the children of William Bradford, and two of the defendants, point out that they survived both the testatrix and Jane B. Porter. They contend that the determination of the class of donees is postponed until the death of the life takers of the income, and, as they satisfy both of the conditions prescribed by this section of the will, that they, and not their father, William Bradford, were and are within that class. See *Doe ex rel. Ingram v. Roe,* 1 *Houst.* 276; *Richardson v. Raughley,* 1 *Houst.* 561; *Taylor v. Crosson,* 11 *Del. Ch.* 145, 98 *A.* 375. They further contend that any other construction, with respect to the intent of the testatrix, absolutely disregards that part of the phrase above quoted *"and may survive the survivor of my sisters as provided in the foregoing sections of this Item IX of my will."*

The complainants, on the other hand, point out that there is a well recognized distinction between the time for determining the donees, who are to participate in a gift, and the time for the actual enjoyment of that gift. They contend that, when "Secondly" is read as a whole, and particularly in connection with other provisions of the will, the only fair inference to be drawn from the words *"or the children or grandchildren of said children, whichever may be living at the time of my death"* is that the class of donees is clearly intended to be fixed at the death of the testatrix; and

that the latter part of the same phrase *"and may survive the survivor of my sisters as provided in the foregoing sections of this Item IX of my will"* is a mere reference to the time for the actual enjoyment of the gift of income, and, therefore, merely a clause of a parenthetical nature, and not a condition or donee qualification. They, also, contend that it is apparent that the children of Mrs. Bradford were the primary objects of the testatrix's bounty, and, as William Bradford, one of her nephews, survived her, though he died before the death of Jane B. Porter, he was, nevertheless, a donee within the meaning of this section of the will. In this connection they further contend that the gifts in "Secondly" *"or to the children or grandchildren of said children, whichever may be living at the time of my death"* are merely of a secondary and substitutional nature in case a child of Mrs. Bradford should die before the death of the testatrix, leaving children or grandchildren then living and surviving her; and that no other construction is consistent with the other provisions of the will. They point out that there is no express provision which substitutes the children of a nephew or niece for their parents, if he or she should survive Mrs. Dwight, but should die before the death of the original life takers of the income from the corpus of the residue of the trust estate. From these arguments, the complainants draw the conclusion that the children of William Bradford do not share in such income during their lives, and that the cases cited on their behalf merely involve general rules of construction which are only applicable in ascertaining a testamentary intent, not clearly apparent from the provisions of the will. In "Secondly", the direction to the trustees to pay income is *"to and among all of the children of my said sister, Lucinda H. Bradford, deceased, or the children or grandchildren of said children, whichever may be living at the time of my death."* The word *"whichever"* is not only significant, but the other language used by the testatrix is followed by the words *"and may survive the survivor of my sisters as provided in the foregoing sections*

*of this Item IX of my will."* The same section subsequently provides *"the distribution in case of such issue to be made per stirpes and not per capita, the issue taking only by right of representation of their respective parents."* There is, undoubtedly, a well recognized distinction between the time for fixing the class of persons selected to participate in a gift, and the time for the actual enjoyment of that gift, as that is frequently postponed in order to carry out other purposes of the will (see *Milford Trust Co. v. Milford Memorial Hospital, ante p.* 43, 4 *A.* 2d 674) ; and that principle seems to be applicable to this case.

In determining whether the phrase *"and may survive the survivor of my sisters"* etc., is a condition, and, therefore, a donee qualification, or a mere parenthetical reference to other provisions, whereby the income from the general trust estate is wholly allocated to the two sisters of the testatrix during their lives, "Fourthly" of section "Twenty-first" of Item IX must, also, be considered in connection with "Secondly". When that is done, it seems impossible to answer the complainants' contention. "Fourthly" provides for the disposition of income when an original actual income taker dies without leaving issue, and, therefore, may be said to be supplementary of and complementary to "Secondly". Because of its alleged description and clarification of what persons are within the income group intended to be designated in that section, it is, therefore, particularly important. That section provides:

"Fourthly. If any of the children of my said brother, or of my said sister, so deceased, or if any of the children or grandchildren of any of such children who may have died before me, living at the time of my death, and who may have survived the survivor of my two sisters as aforesaid, shall die without leaving issue living at the time of their respective deaths, the part of the whole income so collected upon this portion of my residuary estate and theretofore paid to the person so dying, shall be paid to and among the then survivors (being always of the same class) of the children of my said brother, or of my said sister, so deceased, or to the children or grandchildren of any of those who may have died before me, living at the time of my death, and surviving the survivor of my two sisters as aforesaid, if any of such

children or children's children, or grandchildren, be then surviving, of the respective class to which the person so dying may have belonged, for and during the whole term of the respective natural lives of such survivors in equal portions, share and share alike, the payment and distribution, however, in each case to be per stirpes and not per capita, the issue always taking only a deceased parent's share by representation."

### The three important phrases to consider are:

1. *"If any of the children of my said brother, or of my said sister, so deceased, or if any of the children or grandchildren of any of such children who may have died before me, living at the time of my death, and who may have survived the survivor of my two sisters as aforesaid, shall die without leaving issue living at the time of their respective deaths, the part of the whole income so collected upon this portion of my residuary estate and theretofore paid to the person so dying, shall be paid * * *."*

2. The payments on the death of an actual income taker, without leaving issue, so provided for, are to be made for life

"* * * to and among the then survivors (being always of the same class) of the children of my said brother, or of my said sister, so deceased, *or to the children or grandchildren of any of those who may have died before me, living at the time of my death, and surviving the survivor of my two sisters as aforesaid."*

3. "The issue always taking only a deceased parent's share *by representation."*

The persons, on whose death without issue the income primarily paid to them is directed to be paid to the other persons named in this section, are *"any of the children* * * * *of my said sister* * * * *or* * * * *any of the children or grandchildren of any of such children, who may have died before me, living at the time of my death";* and under the subsequent provisions on the death of any such income taker, without leaving issue, the income *"theretofore paid to the person so dying"* is to be paid *"to and among the then survivors* * * * *of the children of my* * * * *said sister* * * * *or to the children or grandchildren of any of those who may have died before me, living at the time of my death."* So far as this section is concerned, the answer to the question presented, therefore,

seems to be whether the words *"who may have died before me,"* following the words *"of any of such children"* and the words *"of any of those"*, refer to the surviving children of Lucinda H. Bradford, deceased, or to the children or grandchildren of any of such children.

After carefully considering the language used, it seems impossible to escape the conclusion that they refer to the surviving children of Mrs. Bradford, and, therefore, to the surviving nephews and niece of the testatrix, and not to persons farther down the line among her collateral relatives. The defendants contend that these words are used parenthetically, but the context will not permit of that construction. Obviously, the additional words *"living at the time of my death"* do not affect this conclusion, though they relate to the children or grandchildren of the nephews or niece of the testatrix, and were probably inserted to prevent possible questions relating to the rule against perpetuities.

The phrase in "Secondly", relied on so strongly by Lucinda H. B. Shakespeare and William Bradford, Jr., is *"and may survive the survivors of my sisters,"* but the significant explanatory words *"as provided in the foregoing sections of Item IX of my will,"* are, also, used in the same phrase. No such explanatory language is used in connection with the words *"whichever may be living at the time of my death,"* which are, also, used in that section. Similar language to that relied on by the children of William Bradford is used twice in "Fourthly". The words *"and who may have survived the survivor of my two sisters as aforesaid"* are used in the first paragraph above quoted; and the words *"and surviving the survivors of my two sisters as aforesaid"* are used in the second paragraph. Neither of these phrases, in express language, refers to the other provisions of Item IX, primarily providing for the payment of income to the sisters of the testatrix during their lives, but both of them end with the words of general reference *"as aforesaid"*.

When "Fourthly" is read in connection with "Secondly", it is apparent that the words in the latter section *"and may survive the survivor of my sisters,"* explained, as they are, by the subsequent words *"as provided in the foregoing sections of this Item IX of my will,"* are merely a reference, of a parenthetical nature, to other provisions of the will, and are in no sense a condition or donee qualification. It is, therefore, apparent that in order for the meaning of "Secondly" to clearly appear it should be read as though it had been written:

> *"Secondly.* To pay the balance of the interest or income so collected, being one-half of all accruing upon this portion of my residuary estate, to and among all the children of my sister, Lucinda H. Bradford, deceased, *or* the children or grandchildren of said children, *whichever may be living at the time of my death* (and may survive the survivor of my sisters as provided in the foregoing sections of this Item IX of my will) in equal portions, share and share alike, semi-annually for and during the whole term of their respective natural lives, the distribution in the case of such issue to be made per stirpes and not per capita, *the issue taking only by right of representation of their respective parents."*

The conclusion that the complainants' contention must be adopted is, perhaps, somewhat strengthened by the phrase in "Secondly" *"the issue taking only by right of representation of their respective parent."* In the absence of anything to show a contrary intent, the words *"right of representation"* ordinarily refer to a deceased parent (see *Bouvier's Law Dict., (Rawles 3rd Rev.)* ; *Web. New Inter. Dict. 2d Ed.*) ; and that they are so used in this case is evident from language, of a more specific nature, used in other provisions of the will.

The immediate question merely involves the distribution of income, and not capital, and it is, therefore, unnecessary for me to consider who may be the ultimate beneficiaries of the corpus of any of the trust funds primarily created for the benefit of the Bradford side of Mrs. Dwight's family.

"Thirdly" of section "Twenty-first" of Item IX relates to the distribution of capital, but the language therein used has, at least, some bearing on the question now before this court, and for that purpose, and for that purpose only, it will be quoted, and some of its provisions considered:

"Thirdly. At the death of any of the said children of my said brother, Willard Hall Porter, or of my said sister, Lucinda H. Bradford, or of any of the aforesaid respective issue of such children whichever may be living at the time of my death, and may have survived the survivor of my sisters, as provided in the foregoing sections of this Item IX of my will, leaving children or grandchildren him or her then surviving, to make a fair and just division of the one-half of the principal of the said balance of my residuary estate, the income of which had been theretofore paid either to the children of my said brother, Willard Hall Porter, or to the children of my said sister, Lucinda H. Bradford, or to their children and grandchildren as aforesaid, as respective classes, into as many parts or portions as there may be then living children of my said brother, Willard Hall Porter, or of my said sister, Lucinda H. Bradford, or the children or grandchildren of any of those that may have died before me, living at the time of my death and who may have survived the survivor of my sisters as aforesaid, belonging to their said respective classes, such children or grandchildren of the children of my said brother, or of my said sister, only, however, to represent their deceased parents, and to pay one of such proportionate parts or portions of the one-half of the principal of the said balance of my residuary estate theretofore producing the income paid as in this section of my will above provided, to such issue of such children of my said brother or of my said sister, so surviving me and the survivor of my sisters as aforesaid and afterwards so dying, leaving such children or grandchildren him or her then surviving, as aforesaid, the payment and distribution, however, in each case to be per stirpes and not per capita, the issue always to take only a deceased parent's share by representation."

In this section, the testatrix provides that, on the death of an income taker, leaving issue, a one-half part of the corpus of the trust fund shall be divided into as many parts or portions as had been the basis for the distribution of the income when the person, so dying, was living. That apportionment is:

"* * * into as many parts or portions as there may be then living children of my said * * * sister * * * or the children or grand-children of any of those that may have died before me, * * * and who

*may have survived the survivor of my sisters as aforesaid, belonging to their said respective classes, such children or grandchildren of the children of my said brother, or of my said sister, only, however, to represent their deceased parents.".*

The directed payment of one of the parts so determined is *"to such issue of such children of my said brother or of my said sister (that is to a nephew or niece) so surviving me and the survivor of my sisters as aforesaid and afterwards so dying, leaving such children or grandchildren \* \* \*."* In view of the fact that William Bradford survived the testatrix, this section is not without significance.

The use of the words *"whichever may be living at the time of my death"* in "Secondly", and the continued repetition of words of similar import in other sections of the will, show an intent that cannot be diregarded or explained away. When, therefore, the will is read as a whole, it is apparent that, as William Bradford died before the death of the survivor of the two sisters of the testatrix, and there is no substitution clause in "Secondly" for the benefit of his children to cover that contingency, neither Lucinda H. B. Shakespeare nor William Bradford, Jr., are entitled to participate in the income from the general trust estate. That being true, Lucinda H. Culbreth, the sole survivor of the children of Lucinda H. Bradford, deceased, is entitled to the whole of that income during her lifetime.

"Fifthly" of section "Twenty-first" of Item IX provides for cross-remainders between the Porter and Bradford sides of the family, on the death of an income taker, without issue, and clearly bears out the same intent of the testatrix. The same primary classes are provided for, and the time for determining the classes is fixed at the death of the testatrix. The further provision, in the nature of a defeasance clause, directs that an actual income taker must likewise survive the survivor of the two sisters. "Sixthly" of the same section and Item is, also, consistent with the whole scheme of the will. It among other things, provides:

*"Should there be no children of my sister \* \* \* and no such issue of any of them who may have died before me living at the time of my death, or surviving me, should survive the survivor of my two sisters \* \* \* or all should die without leaving such issue to whom there could be made an ultimate distribution"*—then to my next of kin.

It must be conceded that, under the provisions of Mrs. Dwight's will, if William Bradford had been an actual income taker, by reason of having survived Jane B. Porter, and had subsequently died, his children would, also, have shares in the income from the general trust estate at his death; but it does not necessarily follow that the testatrix intended them to benefit by her will under the facts before me. If she did, she did not say so, and I can only ascertain her intent from the language used, and cannot draw inferences in favor of the contending defendants because of what they may conceive to be the general scheme of Mrs. Dwight's will. See *Wilmington Trust Co. v. Houlehan, et al.,* 15 *Del. Ch.* 84, 131 *A.* 529.

Franklin H. Shakespeare, the husband of Lucinda H. B. Shakespeare, and a formal party defendant in this proceeding, apparently does not seriously question this construction, as to the meaning of the language used in Mrs. Dwight's will, when read as a whole, but he makes various other contentions, of a highly technical nature, which I do not think necessary to consider in detail. The contentions most strongly emphasized by him seem to be that the duties of the trustees, with respect to payments under Item IX, are purely of a legal nature, with respect to which they are not entitled to apply to a court of equity for instructions; and that the date of William Bradford's death cannot affect trusts previously created. I am not impressed by the soundness of either of these contentions, or of any other contention made by Mr. Shakespeare.

The only other question to consider is whether the trustees have the power and authority to sell and dispose of all, or a part of certain shares of National City Bank stock, a

portion of which composed a part of Mrs. Dwight's estate at the time of her death, but the major portion of which was purchased by the trustees on subsequent dates. Their powers are broad. They are directed under Item IX of the will:

"* * * to keep any personal property of which I (the testatrix) may die possessed, or in which I may be then interested, * * * properly and securely invested, according to their best judgment and discretion, retaining all or any part of the securities or properties in which my said estate is now invested, or to sell, change or reinvest the same, or any part thereof, from time to time as may to them seem wise, expedient for and advantageous to my estate, not meaning or intending to limit my said executors in the exercise of their discretion to such investments as are known as legal investments * * *."

*Item X* further provides:

"I hereby order and direct that my executors and trustees * * * for the purposes of making division of my estate or for any other purpose whatever shall have full power and authority to grant, bargain and sell all or any part of my estate at public or private sale for any price or consideration as to them may seem best, and to execute and deliver all deeds, conveyances and other instruments necessary for the purposes aforesaid, without any obligation on the purchaser, to see to the application of the purchase money thereof, or, for the propriety or expediency of any exercise of this power, and without any necessity to apply to any Court for permission to make such sales or for any directions or approval of the same."

Under such powers, the trustees, in their discretion, have the right to dispose of all, or any part, of the bank stock in question, and to reinvest the funds arising therefrom.

A decree will be signed in accordance with this opinion.