In the matter of the Estate of DANIEL CALDWELL, deceased.

*New Castle, March T.* 1899.

A deposit by a testator in a savings bank in Boston to his own credit as trustee for another, upon proof satisfactorily showing that the nominal *cestui que trust* was a fictictious person and that it was in fact the money of the trustee, was held to pass under the will to specific legatees of "my money that is in the banks in Boston, Mass."

Practice respecting the payment of money into Court by an executor, under "An Act for the Relief of Executors, Administrators and Trustees," passed March 23, 1881, and the distribution thereof.

When money has been paid into Court under the Act of March 23, 1881, for relief of executors, &c., a petition by parties claiming the fund is a proper mode of proceeding.

PETITION FOR DISTRIBUTION OF MONEY PAID INTO COURT BY AN EXECUTOR.—Daniel Caldwell died November 7, 1892, having duly made his will, which after his death was probated and letters testamentary were granted thereon to Daniel Caldwell, his executor. In and by the said will, the testator made a bequest of certain deposits of money in banks in the city of Boston, the interest to his sisters and the principal to their children.

Among the deposits was one, which with interest accumulated thereon, amounted to $1666.76, in the Provident Insti-

tution for Savings, in the name of Daniel Caldwell (the testator) trustee for Richard Caldwell.

The legatees filed their bill in this Court against the executor to recover the legacy, alleging that the person named as *cestui que trust*, Richard Caldwell, had never been heard of, that nothing could be found concerning him, or any representatives, if he were dead.

To this bill the executor demurred, and, on hearing the demurrer, it was sustained. That bill was not amended, and the case ended with the decision on demurrer, which is fully reported under the title *Walker, et al. vs. Caldwell, Ex'r., ante p.* 91–. Reference may be had to the report of that case for a fuller statement of the facts, if required.

The legatees having failed to sustain their bill in equity against the executor, the latter, in July, 1897, filed a petition under the Act of March 23, 1881, entitled "An Act for the Relief of Executors, Administrators and Trustees," 16 *Del. Laws, ch.* 523, *Rev. Code* (1893) 684.

The petition set forth the facts in detail and averred that the petitioner had no knowledge of the trust and was unable to obtain any information whatsoever concerning Richard Caldwell, or any one claiming through or under him. The proceedings in Chancery, above referred to, were recited at length, and the amount of the fund received by the executor, from the Provident Institution for Savings, together with interest accrued thereon was stated as $1913.21, out of which the executor had paid the costs taxed against him in the Chancery suit, amounting to $48.12, leaving in his hands a balance of $1865.09, which he prayed leave to pay into Court after deducting such sum as the Court might deem proper for counsel fees and costs.

The petition was presented by *Charles W. Smith*, for the petitioner.

THE CHANCELLOR considered that the case presented by the petition was within the true intent and meaning of the Act of Assembly under which the proceeding was taken, and that the petitioner should have relief as executor in the manner prayed for in the petition. In section 1, of the statute,

*Rev. Code* (1893) 684, the remedy sought by the executor was provided for, as follows: "and thereupon the Chancellor upon being satisfied that it is a proper case for relief, shall order the petitioner to pay into the Court of Chancery the amount in his hands  *  *  *  ; and upon compliance with such order the petitioner and his sureties shall be discharged from all further liability in respect of the money so paid."

It was accordingly ordered that the petitioner should be allowed to deduct from the sum in his hands $19.33 for costs of this proceeding; $100 paid by him as counsel fee for the defence of the suit in Chancery already referred to and for the proceedings under this petition, and $46.67 for costs allowed by the Register of Wills and charged against the petitioner as executor. The balance of $1699.09 was ordered to be paid into Court "and that thereupon the said petitioner and his sureties shall be discharged from all further liability in respect to the money so paid."

On August 30, 1897, the petitioner filed with the Register in Chancery for New Castle County the certificate of deposit of the Farmers' Bank, for $1699.09.

After the payment of the fund into Court, as above stated, Perry T. Walker, Susan W. Burford and Ailsie A. Jefferson, who had been complainants in the bill previously filed and dismissed on demurrer, as above stated, filed their petition, which was sworn to March 3, 1898, to secure an audit and distribution of the fund, under the Act of March 23, 1881, under which the money was paid into Court.

The petition rehearsed the facts which had been given in detail, in their bill in equity and in the petition of the executor above referred to. After stating the facts concerning the fund arising from the deposit in the name of Daniel Caldwell, trustee for Richard Caldwell, in the Provident Institution for Savings, and the payment into Court of $1699.09, being the balance of said fund undisposed of, the petitioners alleged that the account of Daniel Caldwell, executor, showed full distribution, with the exception, of the estate of his testator, Daniel Caldwell, deceased.

It was further alleged that the petitioners had no knowledge concerning Richard Caldwell, and after diligent inquiry were unable to obtain any information as to his existence or identity; and further that they were informed that Richard Caldwell was a false or fictitious person, having no real or actual existence, and they claim to be entitled to the fund as legatees of the said Daniel Caldwell, deceased.

They alleged that the fund in question was the said Daniel Caldwell's own money held by him for his own use, and that during his life no one had ever claimed it, and that it was now undisposed of.

The prayers were, first, for an order for publication of notice directing all persons having any claim upon said fund to file proofs thereof with an auditor to be hereafter appointed, and, second, that an auditor be appointed to investigate the allegations of the petition and such other matters of fact as might arise in connection therewith and report thereon.

On May 15, 1897, *Leonard E. Wales, Jr.*, for the petitioners asked for an order upon the petition in accordance with the prayers thereof. He discussed at length the questions of law and procedure which should govern such appilcations.

(1) The first question which presents itself for consideration is how the Court should deal with voluntary trusts arising from the deposit of money or funds in bank by one person for the benefit of or in trust for another person.

In *Beaver vs. Beaver*, 117 *N. Y.* 421, Justice Andrews said, "We cannot close our eyes to the well known practice of persons, depositing in Savings Banks money to the credit of real or fictitious persons, with no intention of divesting themselves of the ownership. It is attributable to various reasons,—reasons connected with taxation; rules of the Bank limiting the amount which any one individual may keep on deposit; the desire to obtain high rates of interest, where there is a discrimination based on the amount of the deposits; and the desire, on the part of many persons, to veil or conceal from others knowledge of their pecuniary position."

This class of voluntary trusts has, therefore, given rise to a great deal of litigation, and the decisions of the Courts,

in different States, show an irreconcilable conflict of opinion as to the circumstances under which the donor shall be held to have parted with his control of the subject of the gift. This disagreement seems to have arisen mainly from the peculiar difficulty there is in ascertaining the real intention of the donor, under the special circumstances of the case.

(2) Whether the mere act of depositing money in bank, in trust for another person, is sufficient in itself (when no rebutting evidence is offered) to establish a trust, there seem to be two opposing views which have prevailed.

The Massachusetts doctrine, so called, which is that "A declaration of trust by the owner, or a deposit of the fund in his name as Trustee, or a deposit in the name of another, will not of itself be sufficient to prove a gift or voluntary trust; there must be some further act or circumstance, showing a perfected gift of the legal or equitable interest." *Sherman vs. New Bedford Sav. Bank*, 138 *Mass.* 582; *Alger vs. North End Savings Bank,* 146 *Mass.* 418.

This doctrine appears to have been approved in several states. *Schollmier vs. Schoendelen*, 78 *Ia.* 426; *Smith vs. Speer*, 34 *N. J. Eq.* 336; *Davis vs. Savings Bank*, 53 *Mich.* 163; *Marcy vs. Amazeen*, 61 *N. H.* 131; *Smith vs. Savings Bank*, 64 *id.* 228; *Taylor vs. Henry*, 48 *Md.* 550.

One of the states above mentioned, New Jersey it is to be noticed, has a separate court of chancery, as we have in Delaware.

The opposing doctrine prevails in the State of New York, where a deposit in trust for another gives the latter an immediate beneficial interest in the fund, unless evidence to rebut that inference is given. *Martin vs. Funk*, 75 *N. Y.* 134; *Boone vs. Savings Bank*, 84 *N. Y.* 83; *Mabie vs. Bailey*, 95 *N. Y.* 206; *Beaver vs. Beaver*, 117 *N. Y.* 421.

Other cases in which the courts have regarded this doctrine with favor, are, *Minor vs. Rogers*, 40 *Conn.* 512; *Connecticut River Savings Bank vs. Albee*, 64 *Vt.* 571; *Ray vs. Simmons*, 11 *R. I.* 266; *Gaffney's estate*, 146 *Pa. St.* 49.

(3) The home of the deposit, which is the basis of the present controversy, was in Boston, and it would seem just

and reasonable, therefore, in this present case, to regard with favor the doctrine so clearly laid down in that State and certainly, should any reasonable doubt exist, such an interpretation would be proper in the matter now before the Court.

(4) It is to be observed, moreover, that even in New York, the doctrine there prevailing has been so far modified as to require a deposit in trust to be made for some real and not a purely fictitious person, before the depositor can be said to have parted with any beneficial interest in the fund. *Mabie vs. Bailey*, 95 *N. Y.* 206.

(5) The question naturally arises in this case, whether the supposed beneficiary or *cestui que trust* of the bank deposit had any real existence.

To determine the existence or non-existence of the beneficiary requires an application of a rule well laid down in some cases, that extrinsic or explanatory evidence may be given to rebut such presumption as arises from a deposit of this kind. *Davis vs. Savings Bank*, 53 *Mich.* 163; *Northrop vs. Hale*, 72 *Me.* 275; *Powers vs. Provident Institution for Savings*, 124 *Mass.* 377.

Hence the real purpose of the depositor may be shown by evidence of his antecedent, or contemporaneous declarations; *Scott vs. Savings Bank*, 140 *Mass.* 157; *Connecticut River Savings Bank vs. Albee*, 64 *Vt.* 571; or by contemporaneous facts; *Mabie vs. Bailey*, 95 *N. Y.* 206; *Northrop vs. Hale*, 72 *Me.* 275.

Thus it may be shown as we contend here, that the object of the depositor, in making the deposit in trust for another, was to evade some by-law of the Bank, as for example, one limiting the amount of a deposit which would draw interest. *Beaver vs. Beaver*, 117 *N. Y.* 421; *Brabrook vs. Savings Bank*, 104 *Mass.* 228; *Field vs. Lonsdale*, 13 *Beav.* 78.

If the Court is disinclined to adopt the Massachusetts doctrine, above quoted, and to hold the mere fact of the deposit sufficient to establish a trust, it then becomes necessary to offer testimony in explanation, or to rebut the presumption of the trust.

The existence or non-existence of a trust is, in practice, usually a question of fact to be determined by a jury.

For the purposes of the present case, however, where the parties in interest, with the exception of the mythical *cestui que trust*, are supposed to be friendly, it would seem that a more simple method could be employed for ascertaining the necessary facts.

(6) This brings us to the question, how the final disposition of the money now in Court shall be determined.

In the absence of precedent it has seemed that the proceeding in this behalf must be either by bill or by petition. This petition is presented as at least an appropriate method of bringing the whole subject matter before the Court for its determination, but with the desire on the part of the parties, as well as of counsel, to act in this *ex parte* proceeding upon any suggestion of the Chancellor, if he should deem another form of proceeding more appropriate in such a case.

The Chancellor was of opinion that a petition was the better form of proceeding under the statute. A bill would not be a proper form of proceeding in a case where there is no adverse party to be summoned to answer it. The form of proceeding seems to rest entirely in the discretion of the Chancellor, by the terms of the statute which provides:

"Sec. 3. The Chancellor shall have power to direct such proceedings, issue such writs, and make such orders as he may deem expedient for ascertaining the parties entitled to the money paid into court as aforesaid, and for the payment and distribution of the same; and for this purpose he may cause notice to parties interested, residing out of this State, or whose residences are unknown, to be given by publication or otherwise as he may direct and may appoint an auditor to investigate and report to him as to any matter necessary to be determined in the premises. Any proceeding, writ, or order authorized by this act may be taken, directed, issued, returned or made as well in vacation at chambers as at term time." *Rev. Code* (1893) 685.

He considered that all the analogies are in favor of the petition, which is the usual form of proceeding in all cases of applications to pay money out of Court, or to invoke the authority of the Court for disposing of any money or property which has been placed within its custody and control.

He further considered that the method of investigation suggested in the statute was well adapted to this case. The form of the deposit seems to raise the presumption of a trust, which is open to be rebutted by the petitioners. Whether standing alone it is sufficient, either upon reason or the weight of authority it is unnecessary to consider until after an investigation of the facts, as that might render a consideration of this question unnecessary. All the conditions of the case, therefore, made the appointment of an auditor necessary to investigate all claims and to examine such evidence as might be presented with respect thereto.

Accordingly an order was entered directing the publication, for thirty days in a newspaper mentioned in the order, of notice "directing all persons having any claim or interest in the money or fund * * * to file proof of their claim or claims thereto with J. Harvey Whiteman, hereinafter appointed auditor in this cause, on or before July 5, 1899."

By the same order J. Harvey Whiteman was appointed auditor, in accordance with the Act of Assembly above recited, to investigate any and all claims, and fully determine their relative priority and the interest or share of each person entitled to receive any part of the fund, and such other matters of law or fact as might arise in the investigation, and make report, subject to the Chancellor's approval and final decree.

The auditor made his report July 30, 1899, substantially as follows:

He had visited Boston and examined the accounts of the savings institution; Daniel Caldwell had an account with balance to his credit of $753.19, and on November 9, 1842, he drew therefrom $253.19, leaving to his own credit $500, and the sum drawn he deposited in the name of Daniel Caldwell, trustee of Richard Caldwell. Both of these accounts were kept running.

The auditor had found no person having any knowledge of the existence of Richard Caldwell, and believed that no information concerning him could be obtained. The by-laws

of the savings bank limited the payment of interest, to accounts not exceeding $500, hence it was the practice of many persons to open new accounts, in fictitious names, in order to carry deposits of more than $500 and receive interest thereon.

This practice was well known to the officers of the bank, and the auditor reported that, if the *cestui que trust* was a *bona fide* person, the records of the savings bank would probably disclose his existence.

On one occasion the testator made a draft on each account and deposited the proceeds of both to his own individual account, in the National Bank of Delaware at Wil-- mington, and thereafter treated such deposit as his own property.

The auditor stated as his conclusion that, upon the evidence, he believed the deposit in the name of Daniel Caldwell, trustee for Richard Caldwell, to be the individual property of Daniel Caldwell.

With respect to the persons entitled, the auditor found that Daniel Caldwell had two sisters, Susan Walker and Elizabeth (Betsy) Ross, both of whom had been married and · died.

The petitioners were the children of Susan Walker, who also had two other children, James H., who died without issue during the lifetime of Daniel Caldwell, and Mary L., wife of Jacob Havilow, who died during the lifetime of Daniel Caldwell, leaving two children, who, according to the report of the auditor, took nothing under the terms of the legacies.

The children of Betsy Ross were Mary E., wife of William H. Sturms, and Anna B. Ross, both of whom survived Daniel Caldwell, but had since died, and letters of administration on each of their estates were granted to William H. Caldwell, on June 10, 1898, who joined in the petition.

Accordingly the auditor reported that the fund was distributable, *per capita*, to Susan Burford, Ailsie A. Jefferson, Perry T. Walker, and William H. Caldwell as administrator of Mary E. Sturms, and the said William H. Caldwell, as administrator of Anna B. Ross.

Opinion:—approval of Auditor's report.

On August 7, 1899, the report of the auditor, having been held under advisement, *Leonard E. Wales, Jr.*, for the petitioners, made a motion that it be confirmed.

The Chancellor was of opinion that upon the report of the auditor and the evidence as reported by him; the savings bank deposits made by the testator, to the credit of himself as "trustee for Richard Caldwell," had, during the period of about fifty years, been treated by the testator as his own money; that there had not been found either by the parties interested or by the auditor any evidence or information of the existence or identity of the *cestui que trust*, or of legal representatives; that it appeared that Richard Caldwell was a fictitous person, and that it was a common practice of depositors in that savings bank, the custom of which was well known to the officers, to open fictitious trust accounts in order to evade a by-law limiting the amount on which interest would be paid, and that all the evidence indicated that this was such a case.

He, therefore, considered that the deposit in question should be treated as the proper money of the testator and be held to pass under the bequest of "my money that is in the banks in Boston, Mass."

The facts proved and reported by the auditor made it unnecessary to examine critcially the authorities, with respect to the effect to be given to the form of the deposit, if it stood alone, or to discriminate between the two lines of cases cited by counsel, and determine the effect which this Court would give to a deposit in that form standing alone and unexplained by other evidence; that should be left for decision when a proper case arose.

Upon examination of the auditor's report, therefore, he considered that the same should be approved and confirmed, and a decree of distribution was thereupon entered, directing the payment of the costs, amounting to $367.73, and the distribution of the residue according to the report of the auditor.