In the Matter of the Estate of MARY MANNIX, Deceased.

Surrogate's Court, Westchester County, April 28, 1933.

*John J. Broderick,* for Yonkers National Bank and Trust Company, executor.

*Stephen F. Thayer,* for the Yonkers Savings Bank.

SLATER, S.   The Yonkers Savings Bank was directed to appear by order to show cause and state why a certain savings bank deposit in the sum of $2,851.47 should not be delivered to the Yonkers National Bank and Trust Company, as executor of the deceased. The answer alleges that on or about April 2, 1931, the account standing in the name of Mary Mannix was transferred by the decedent to " Mary Mannix in Trust for Lizzie Haffey; " that said account has continued to so remain until the death of decedent; that said indorsement was also made upon the deposit book or pass book.

The decedent made a will dated February 11, 1932.   It directed the payment of lawful debts; gave $1 to a sister-in-law; directed burial and the purchase of a suitable plot and headstone; bequeathed $200 for masses; and gave the rest, residue and remainder of the estate, both real and personal, to a brother, James Haffey, and a sister, Elizabeth Haffey, residing in Ireland.

The decedent died February 18, 1932.

It appears from the evidence submitted that the account in the Yonkers Savings Bank was opened by the decedent in January, 1909, in her own name.   Additions and withdrawals were made from time to time.   A change in the deposit was made January 30, 1929 — " Mary Mannix in trust for Michael Mannix."   Michael

Mannix was decedent's stepson and he died about a year before her death.

Again, a change was made April 2, 1931, and the deposit continued in the name of " Mary Mannix in trust for Lizzie Haffey " and so continued until decedent's death.

The pass book No. 83754 corresponds with the bank deposit card. It was always in the possession of the decedent and was offered in evidence.

The " Lizzie Haffey " named as beneficiary of the trust is the same person mentioned as " Elizabeth Haffey " in the will.

Testimony adduced shows that the decedent owned *no other property real or personal;* that there was no prior deposit except as mentioned above. There was no life insurance. *No evidence was offered of any conversations with decedent in relation to the deposit.*

The form of the deposit creates a tentative trust, revocable at will until the depositor dies, or completes the gift in her lifetime by some unequivocal act or declaration such as the delivery of the book or notice to the beneficiary. (*Matter of Totten,* 179 N. Y. 112; *Matthews* v. *Brooklyn Savings Bank,* 208 id. 508; *Matter of Vaughn,* 145 Misc. 332.)

Upon the facts in the instant case, was the tentative trust revoked by decedent's last will and testament?

The will in question does not in terms revoke the trust, and hence the question is raised whether the provisions of the will evidenced an intent to revoke the tentative trust.

The decisions are mostly in the lesser courts and appear to be in confusion.

In *Walsh* v. *Emigrant Industrial Savings Bank* (106 Misc. 628; affd., 192 App. Div. 908; affd., 233 N. Y. 512) the depositor, when she drew her will, exhibited three savings bank books and bequeathed her estate upon the basis of the amount represented by the books, and further stated she *did not want the beneficiary to have any of her money.* The court held she established an affirmative act of revocation or disaffirmance of the trust.

*Matter of Beagan* (112 Misc. 292) was a case where the tentative trust was not completed by delivery of pass book or notice to the beneficiary. It appeared by the will that legacies were given approximately in the amount of the deposit and that, in drafting the will, the decedent kept account of each sum to the legatee. She had *no other property.* The title to the deposit was held to be in the estate of the decedent.

A similar ruling is made by Surrogate SCHULZ in *Matter of Wolf Brown* (N. Y. L. J. Feb. 21, 1923).

In *Moran* v. *Ferchland* (113 Misc. 1) the court held, Judge

LAZANSKY writing, that a tentative trust in a savings bank deposit is revoked by the donor's will giving the *very account of the deposit* to another person.

In *Matter of Brazil* (127 Misc. 288) it was held the trust was revoked because the testator by his will made *express reference to the account in the bank* which created a direct disaffirmance of the trust. (This case was reversed upon another point, 219 App. Div. 594. See, further, *Matter of Brazil*, 130 Misc. 299.)

*Marshall* v. *Franklin Soc. for Home Bldg. & Savings* (131 Misc. 611) was not a savings bank case. The donor held as trustee for the donee. There was an absence of evidence of a revocation of the trust. Consequently, judgment was directed in favor of the beneficiary.

- *Meehan* v. *Emigrant Industrial Savings Bank* (213 App. Div. 807; affd., 241 N. Y. 564 [1925]) is very similar to the instant case. The trust was held to be effective as against the terms and the residuary clause of the will. A study of the case on appeal discloses that the deposit was made April 27, 1900. The date of the will was January 7, 1908, and death occurred June 22, 1910. The will directed the payment of debts and funeral expenses; bequeathed $1,000 and gave all the rest, residue and remainder of the property to the son. The findings of fact by the trial judge were to the effect that, on a number of occasions, the decedent exhibited to witnesses the bank book and told witnesses that she had a bank book in the Emigrant Industrial Savings Bank for Lizzie Quirk, the trust beneficiary, and that she had taken good care of Lizzie Quirk. As conclusions of law, the court held that, while this was a revocable trust prior to her death, the decedent had not revoked it up to the time of her death but, on the contrary, on various occasions reasserted her intention to leave the deposit to her niece.

The difference between this case and the instant case is the introduction of evidence in the *Meehan* case by conversations had with witnesses with regard to the intent of the decedent. Similar conversations are lacking in the instant case.

In *Matter of Richardson* (134 Misc. 174) it appears that *the money was the sole property of the decedent.* A tentative trust was created. Decedent made a will giving his " entire estate which consists of personal property " to the wife of the executor, after giving a detailed description of the bank account to the attorney who drafted the will. The court said that the tentative trust did not become an irrevocable trust, and that the mere general or residuary bequest *in the absence of anything else* does not effect a revocation of the tentative trust.

Testimony, however, was adduced *as to decedent's declarations* and the decision turned on such declarations as constituting decisive acts of disaffirmance; that the trusts were revoked and the legatee under the will was entitled to the fund on deposit.

In this case the surrogate endeavored to reconcile the conflict of decisions on the difference between *specific* legacies and the *residuary* gifts.

*Matter of Murray* (143 Misc. 499) involved the construction of decedent's will. The decedent had created a savings bank trust for a sister some time before he executed his will, by which will he gave her the use of his estate for life and directed the payment of $2,000 in *eleven specific legacies* at her death. It appears that, at the time of his death, decedent did not have enough to pay the legacies in full.

The evidence established that decedent had in mind that the money he had deposited in the savings bank constituted the bulk of his estate, and that he well knew that, after deducting the funeral and other expenses from the amount he had on hand, there would be very little left of which his sister could have the life use. To carry out his evident intent, the court said, the decedent had to revoke the trust, and it must be held that he did so by the execution of his will. (See 42 Yale Law Journal, Nov. 1932, p. 141.)

In *Matter of Schrier* (145 Misc. 593) the court held that the tentative trusts were revoked because of *direct reference in the will* to moneys on deposit in savings banks, which effected the revocation of the tentative savings bank trust.

In *Matter of Reich* (146 Misc. 616 [Feb. 1933]) Surrogate WINGATE has extended the rule of revocation of savings bank trusts beyond any ruling by an appellate court in holding that, where general assets of an estate are insufficient to pay the creditors and reasonable funeral and administration expenses of the decedent, these obligations are a charge against the funds in a savings bank trust which is not revoked by the decedent in her lifetime or by will. The learned surrogate depends upon *Beakes Dairy Co.* v. *Berns* (128 App. Div. 137 [1908]) as authority. (See the review of this case in 33 Columbia Law Review, Mar. 1933, p. 548.)

The most recent case upon the general subject is *Matter of Rosso* (146 Misc. 746), by Surrogate DELEHANTY. This case turned on the *delivery of the pass book* in the lifetime of the decedent, the court holding that an irrevocable trust had been created.

In the instant case the decedent directed by a will executed a week before her death that her funeral expenses be paid, a suitable burial plot be purchased, a headstone erected, and further bequeathed a sum for masses. These are signals of intention to

483

revoke the tentative trust. The intention is plain and will be carried out.

Upon balancing the facts and the law of the several cases upon the subject, I conclude that, upon the facts of this case, the decedent intended by her last will and testament to revoke the tentative trust. The court holds that said tentative trust is revoked. The sum of money on deposit in the Yonkers Savings Bank belongs to the estate and should be delivered to the executor of the decedent's estate.

Submit order in accordance herewith.