DELAWARE TRUST COMPANY, a corporation of the State of Delaware, Executor and Trustee under the will of Ella C. Brady Deakyne, deceased,

*vs.*

THE RT. REV. EDMOND J. FITZMAURICE, Roman Catholic Bishop of the Diocese of Wilmington, SISTERS OF CHARITY OF ST. PETER'S SCHOOL, INCORPORATED, a corporation of the State of Delaware, THE ROMAN CATHOLIC MALE PROTECTORY, INCORPORATED, CHRIST OUR KING CHURCH, a religious corporation of the State of Delaware, JOHN B. BRADFORD, CONSTANCE BRADFORD, GEORGE T. OGLE, ELLEN MARIE OGLE, ELIZABETH RUTH OGLE, WILLIAM G. CRUMLISH, JR., JOHN S. CRUMLISH, ELEANOR DOHERTY, LOUIS BUSH BRADFORD, GEORGE S. BRADFORD, KATHERINE B. BURNS, ELIZABETH B. DOUGHERTY, RUTH M. OGLE, MAURICE KIRBY BRADY, JOHN BRADLEY BRADY, PARKE HOWLE BRADY, and EDWARD J. BRADY.

*New Castle, April 12, 1943.*

104

*William Poole,* of the office of Southerland, Berl & Potter, for Delaware Trust Co., executor and trustee.

*E. Ennalls Berl,* for the Rt. Rev. Edmond J. FitzMaurice and others.

*James R. Morford,* of the firm of Marvel & Morford, for William G. Crumlish, Jr., and another.

*Robert H. Richards, Jr.,* of the firm of Richards, Layton & Finger, for Brady and others.

*Henry R. Isaacs,* for Ruth M. Ogle and another.

HARRINGTON, Chancellor: This is a bill to construe the last will and testament of Ella C. Brady Deakyne, deceased. Her will was, in part, as follows:

"Item 2. I give and bequeath the sum of Five Hundred Dollars to the Catholic Bishop of the City of Wilmington, Delaware, to be distributed by him, in his discretion, within one year after my death, among the priests of his diocese, for the purpose of having masses said for me."

* * * * * *

"Item 7. I give and bequeath my marble top table, my inlaid table and my bedroom suite, formerly belonging to my mother, to my sister, Sarah Josephine Crumlish."

In Item 10, the testatrix gave, devised and bequeathed all of the rest, residue and remainder of her estate, real and personal, in trust to pay the income to her husband during his lifetime, and, after his death,

"to pay the sum of Eight Hundred and Thirty-seven Dollars and Eighty-eight Cents, part of the share received by me from the Estate of my father, to my sister, Sarah Josephine Crumlish; and to pay the sum of Eight Hundred and Thirty-seven Dollars and Eighty-eight Cents to the children then living of my sister, Annie M. Bradford, and the issue of any deceased child of hers, such issue of any such deceased child of hers to take among them the share their parent would have received, if living.

"And in further Trust, after the death of my said husband, I direct that my Trustee herein named, or whoever may execute and carry into effect the Trusts, provisions and appointments made in this, my last Will and Testament, shall set aside the principal sum of Ten Thousand Dollars out of said rest, residue and remainder of my estate, for the purposes and upon the Trusts following, to-wit:

"To pay the net income therefrom to Ruth M. Ogle of the City of Wilmington, Delaware, so long as she lives up to and observes and follows the teachings and faith of the Roman Catholic Church, and no longer; and upon her death, or failure to live up to, observe and follow the teachings and faith of that Church, as aforesaid, then and in that

event the said principal sum of Ten Thousand Dollars, herein created as a Trust Fund, shall fall into, become, and be a part and portion of the said rest, residue and remainder of my estate, as set forth in and to be disposed of as herein provided.

"And in further Trust, to divide and apportion all of the rest, residue and remainder of my estate into three equal parts or shares, and to pay out and dispose of the same in manner following, to-wit:

"One equal third part thereof, I give, devise and bequeath to the children of my sister, Annie M. Bradford, living at the time of my death, and the issue of any deceased child of hers then living, such issue of any deceased child, to take, among them, the share their parent would have taken if then living.

"One other equal third part thereof, I give, devise and bequeath to the grandchildren of my brother, Eugene D. F. Brady, living at the time of my death, and the issue of any deceased grandchildren, such issue of any deceased grandchild to take among them the share their parent would have taken if then living.

"And the income of the remaining one equal third part thereof, I give, devise and bequeath to my sister, Sarah Josephine Crumlish, for and during the term of her life; and immediately upon her death, I give, devise and bequeath the principal of said one equal third part thereof to her children then living at the time of her death, and to the issue of any deceased child of hers, such issue of any such deceased child to take among them the share their parent would have taken if then living.

"Item 11. It is my will, and I so direct, that sums of money or portions of my estate, that are herein and hereby made payable, bequeathed or devised to John Crumlish, child of my said sister, Sarah Josephine Crumlish, shall be paid to said Union National Bank, as Trustee for the said John Crumlish, in trust, to pay the net income therefrom to the said John Crumlish, for and during the term of his natural life; and upon his death, in further Trust, to pay the principal of said Trust Fund, or sum of money so held in trust for the said John Crumlish, to William Crumlish, brother of the said John Crumlish, if living at that time; and in further Trust, if the said William Crumlish be not then living, then to pay said principal of said fund, so held in trust for the said John Crumlish, equally to and among the next of kin of the said Ella C. Brady Deakyne, in full execution of the said recited trust of and for the said John Crumlish."

The first codicil to the will of the deceased was dated July 21st, 1936, and was, in part, as follows:

"Item 1. Whereas I gave to Sarah Josephine Crumlish, in Item 7

of my last Will, my marble top table, my inlaid table and my bedroom suite, formerly belonging to my mother, now due to the fact that the said Sarah Josephine Crumlish is now dead, I hereby give and bequeath to John Bradley Bradford my marble top table and my inlaid table; and to William Crumlish, I give my bed room suite.

"Item 2. I give and bequeath to Ruth Ogle all of my wearing apparel and bed clothes.

"Item 3. Whereas, in Item 10 of my said Will, I directed my Trustee therein named, upon the death of my husband Thomas Deakyne, to pay the sum of Eight Hundred and thirty Seven and 88/100 Dollars to my sister Sarah Josephine Crumlish; now due to the fact that my said sister is now dead, I hereby give and bequeath the said sum of Eight Hundred and Thirty Seven Dollars and Eighty Eight Cents, to the children of the said Sarah Josephine Crumlish, and to the survivor of them, if either one be dead at the time of my death."

On January 10th, 1939, the testatrix duly executed a second codicil to her last will and testament, which was as follows:

"The furniture which I left in my will to J. Bradley Bradford and William G. Crumlish is to be sold, and the money I left William G. Crumlish in my will is to be put in trust for him as long as he lives.

"The money which is in the Wilmington Savings Fund under the name of George Thomas Ogle, Son of George and Ruth Ogle is to remain in bank until he is twenty-one and is to be turned over to him at that time, with interest.

"I also wish all my household goods sold at private sale if possible. If it cannot be sold at private sale, then it is to be sold at public sale. Anything not disposed of at such sales Ruth Ogle may have if she so wishes, and then if anything is left it is to be given to the Catholic Guild."

At the death of the testatrix, the Rt. Rev. Edmond J. FitzMaurice, one of the defendants, was the Catholic Bishop of the Diocese of Wilmington, and still is the Bishop of that diocese.

John Bradley Bradford, a beneficiary under the will, and alleged to be a beneficiary under the codicils thereto, died March 29th, 1938. His surviving children and next of kin are defendants in this action.

Sarah Josephine Crumlish died prior to the death of her sister, Ella C. Brady Deakyne, leaving to survive her two children, William G. Crumlish and John S. Crumlish, both of whom are, also, defendants in the action.

Thomas Deakyne, husband of the said Ella C. Brady Deakyne, is also deceased.

By the express direction of the testatrix, in Item 2 of her will, the legacy of $500.00, given to the "Catholic Bishop of Wilmington" was "to be distributed by him, in his discretion, within one year after my death, among the priests of his diocese for the purpose of having masses said for me". Though not mentioned by name, the Roman Catholic Bishop in office at the death of the testatrix takes the gift. Bishop Fitzmaurice was, therefore, the intended legatee, but it was not a personal bequest. The discretion given him merely related to the mode of distributing the fund "among the priests of his diocese", for the purposes specified in that item of the will. That direction was imperative, and an intent to create a trust is, therefore, apparent. The use of formal and technical words, though important in determining the real intent of a testatrix, is not absolutely essential to the creation of a trust. *Jones v. Bodley*, 26 *Del.Ch.* 218, 27 *A.2d* 84; *Tippett v. Tippett*, 24 *Del. Ch.* 115, 7 *A. 2d* 612. The important question is always whether it appears from the language of the will that she intended to impose a definite and binding obligation on a legatee, to use and expend the legacy given in some particular manner. *Tippett v. Tippett, supra; Wilmington Trust Co. v. Pryor*, 26 *Del.Ch.* 191, 25 *A.2d* 685; see also *Jones v. Bodley, supra*. When such an intent clearly appears, a trust is usually created, no matter how informal the language used may be. *Tippett v. Tippett, supra.*

Though suggested, it is not seriously contended that a private trust was created. There might be theoretical objections to that contention. See 1 *Bogert on Trusts and Trustees*, § 164; 2 *Bogert on Trusts and Trustees*, § 376. The real question is whether the will makes the Bishop the trustee of

a valid charitable trust. In considering that question, we must bear in mind that a charitable trust is one that is "for the benefit of the public or of some portion thereof; * * *." *Delaware Land & Develop. Co. v. First, etc., Church,* 16 *Del. Ch.* 410, 147 *A.* 165, 171; *In re Caus* [1934] *L.R.,* 1 *Ch.* 162; see, also, *Doughten v. Vandever,* 5 *Del.Ch.* 51. Moreover, the advancement of religion may be one of the objects of a charitable trust. *Hutton v. St. Paul's Brotherhood,* 20 *Del.Ch.* 413, 178 *A.* 584; *In re Caus* [1934] *L.R.,* 1 *Ch.* 162. A gift of a fund, in trust, for the purpose of having masses said for the soul of the testatrix is for that purpose and is, therefore, ordinarily a valid charitable trust. *In re Caus, supra; Mahoney v. Nollman,* 309 *Mass.* 522, 35 *N.E.2d* 265; *Gilmore v. Lee,* 237 *Ill.* 402, 86 *N.E.* 568, 127 *Am.St.Rep.* 330; 2 *Bogert on Trusts and Trustees,* § 376; *Lewin on Trusts,* 116; 3 *Scott on Trusts,* 1994; see, also, *Bourne v. Keane* [1919] *A.C.* 815.

The common law recognized the validity of gifts for that purpose. Bourne v. Keane, supra. Whatever might have been the real basis of the later English rule that such a gift was for a superstitious use and, therefore, void, that rule can have no place in a state that recognizes and guarantees the right of religious freedom to all. 2 *Bogert on Trusts and Trustees,* § 376; 5 *R.C.L.* 328. The celebration of masses is publicly conducted, and the religious benefit conferred is, therefore, regarded by the Roman Catholic Church as general and public, and not confined to the soul of the person for whom they are said. *Bourne v. Keane, supra.*

Nor does Item 2 of the will violate the provisions of *Section 2488 of the Revised Code of 1935. Monaghan v. Joyce,* 12 *Del.Ch.* 28, 103 *A.* 582. The bequest to the Bishop was for certain prescribed purposes, connected with the duties of his office, but the statute merely provides:

"No grant, conveyance, devise or lease of personal or real estate to, nor any trust of such personal or real estate for the benefit of any person, and his successor and successors in any ecclesiastical office, shall vest any estate or interest in said person or his successor; * * *."

The bequest in question was not for the benefit of the Bishop "and his successor or successors" in that office. The mere fact that the gift was in trust to a person holding an ecclesiastical office is not enough to bring it within the prohibition of the statute. *Monaghan v. Joyce, supra.*

In Item 7 of her will the testatrix gave certain furniture to her sister, Sarah Josephine Crumlish. In the first codicil, after reciting her death, she gave some of the same articles to John Bradley Bradford and the remainder to William Crumlish. But in the second codicil she provided:

"The furniture which I left in my will to J. Bradley Bradford and William G. Crumlish is to be sold".

The testatrix did not dispose of the proceeds of the sale in that instrument and though the amount involved is probably small, its proper disposition must be determined.

When fairly and reasonably possible both the provisions of a will and the codicils thereto must be reconciled. 1 *Page on Wills, (L.T.Ed.)* 843, 844, *note; Bringhurst v. Orth,* 7 *Del.Ch.* 178, 44 *A.* 783; *Equitable Trust Co. v. Banning,* 17 *Del. Ch.* 95, 149 *A.* 432; 69 *C.J.* 120, 122. But it does not follow that the amount realized from the sale, pursuant to the direction of the second codicil, must be distributed in accordance with the rights previously given by the first. That direction cannot be fairly reconciled with the prior specific bequest of the same property and necessarily indicates an intent to revoke it in its entirety. See *Page on Wills, (2nd Ed.,)* 697, 698; 69 *C.J.* 122.

Furthermore, with a few exceptions, indicated by bequests, the testatrix directed the sale of all of her personal property in her original will (Items 9 and 12) ; and it is apparent that she intended the proceeds to be distributed as a part of the residue of her estate under Item 10. The provisions of the codicils are consistent with that general scheme. One adds a specific bequest of some of her household goods, which would be excepted from the prior direction to sell. The other directed the sale of furniture that had been

previously bequeathed; but there is nothing to indicate any change as to the intended scope of Item 10 of the will. See *Meredith v. Meredith,* 5 *W.W.Harr.* (35 *Del.*) 35, 157 *A.* 202; 69 *C.J.* 122.

In Item 10 of her will, the testatrix directed that on the death of her husband the net income on $10,000 be paid by her trustee to Ruth M. Ogle, of the City of Wilmington, "so long as she lives up to and observes and follows the teachings and faith of the Roman Catholic Church, and no longer; * * *." She further provided that "upon her death, or failure to live up to, observe and follow the teachings and faith of that Church, as aforesaid, then and in that event the said principal sum of Ten Thousand Dollars," should become a part of the residue of her estate, and "be disposed of as herein provided."

In the same item, the testatrix then disposed of the entire residue of her estate to other persons.

At the hearing, Ruth M. Ogle admitted that she was not a member of, or in any way affiliated with, the Roman Catholic Church; but, on the contrary, was a member and communicant of the Protestant Episcopal Church.

The language of the will must be given a fair and reasonable construction, and can mean no more than that Ruth M. Ogle can only benefit by the bequest "so long as" she is a recognized member of the Roman Catholic Church, and professes to follow and observes its teachings. Such a condition is not contrary to any established policy of the common law, or of any law of this State, and is valid and binding both on Ruth M. Ogle and on the trustee; the testatrix had the right to burden the gift with the condition imposed. *Magee v. O'Neill,* 19 *S.C.* 170, 45 *Am.Rep.* 765; *In re Kempf's Will,* 252 *App.Div.* 28, 297 *N.Y.S.* 807; *Barnum v. Baltimore,* 62 *Md.* 275, 50 *Am.Rep.* 219; *Re Trust Funds,* 61 *Eng Rep.* 14; *Hodgson v. Halford,* 11 *Ch.Div.* 959; *Thompson on Wills,* 474; 69 *C.J.* 666; see, also, *Clavering v. Ellison,* 7 *H.L.C.* 707, 11 *Eng.Rep.* 282; *In re May* [1917] 2 *Ch.* 126; *In re Paulson's*

*Will,* 127 *Wis.* 612, 107 *N.W.* 484, 5 *L.R.A.* (*N.S.,*) 804, 7 *Ann. Cas.* 652.

Ruth M. Ogle contends that such a condition attached to a material gift tends to induce fraud and hypocrisy, and tends to replace the real religious beliefs of a legatee by a mere pretended belief in other doctrines with which she may have no real sympathy, and is, therefore, contrary to the moral well-being of the State, and an invalid restriction on her rights. *Maddox v. Maddox's Adm'r.,* 11 *Grat.,* (*Va.,*) 804; 2 *Page on Wills,* (*2nd Ed.,*) 1920. Few courts have adopted that broad contention; *Drace v. Klinedinst,* 275 *Pa.* 266, 118 *Pa.* 907, 25 *A.L.R.* 1520, involved different principles. The law relating to conditions in absolute restraint of marriage is not applicable. *In re Trust Funds, supra.* Moreover neither *Section 1 of Article 1 of the State Constitution,* nor any provision of the Federal Constitution, affects this conclusion. Religious freedom is guaranteed to all citizens, and any legislation affecting that right is prohibited; but the mere inducement to adopt or to adhere to a particular religious belief is not a denial of religious freedom. *Magee v. O'Neill, In re Kempf's Will, In re Paulson's Will, supra;* 12 *C.J.* 945; 16 *C.J.S., Constitutional Law,* § 206. The constitutional guarantees are limitations on the powers of the government, not on the rights of the governed.

Ruth M. Ogle is, therefore, not entitled to the gift in question.

By Item 10 of her will, on the death of her husband. Thomas Deakyne, the testatrix made two separate and distinct provisions for her sister, Sarah Josephine Crumlish. One was an absolute and unrestricted gift of $837.88, which represented a portion of the amount she had received from her father's estate. The other was the income for life, on a one-third part of the residue of her estate, which was bequeathed in trust. By the same item of the will, at the death of Sarah Josephine Crumlish, the corpus of that fund was to be paid to her children "then living". But Item 11 of the

original will limits the rights of John Crumlish given by Item 10. It provides that any sums of money, payable to him shall be held in trust, and the income thereon paid to him "for and during the term of his natural life". Upon John's death, the corpus of the fund, so held for him, is to be paid to his brother, William Crumlish, "if living at that time". If he should not be living at the death of John Crumlish, that fund is to be paid "equally to and among the next of kin of the said Ella C. Brady Deakyne". By the original will no moneys to which William G. Crumlish is, or may be, entitled were to be held in trust for his benefit during his lifetime; when his rights accrued, he was to be entitled to his share, clear of any trust. But the second codicil changed that right. It provided "* * * the money left William G. Crumlish in my will is to be put in trust for him as long as he lives."

While the codicil may not have been drawn by an expert, it clearly indicates an intent that any share of William G. Crumlish in the residue of the estate is to be held, in trust, during his lifetime, and the income, only, paid to him. It is unnecessary to determine the disposition of that fund at his death.

The third item of the first codicil recites the death of Sarah Josephine Crumlish, the prior bequest to her of $837.88, and, without any restrictive words, bequeaths the same sum to her children "and to the survivor of them if either one be dead at the time of my death." Standing alone, that would be an absolute gift to them; but it is contended that when this provision is read with the original will and the subsequent codicil, it appears that the shares of John Crumlish and William G. Crumlish in this fund were likewise intended to be held in trust. Item 11 of the will directs that the "sums of money or portions of my estate that are herein made payable * * * to John Crumlish shall be paid to" the trustee named in that instrument, for whom the complainant has been substituted.

The words "herein made payable," in the original will, merely cover the share of John Crumlish in the residue of the estate; and the absence of any language in the first codicil, directly or indirectly indicating that the bequest made thereby was intended to be controlled by the trust provisions of the original instrument, seems significant.

My conclusion, therefore, is that John's share in the legacy of $837.88 was intended to be given to him, absolutely.

But the alleged rights of William G. Crumlish in the same fund are not so clear. In the second codicil the testatrix directs that "the money" left him "in my will" be "put in trust for him." Standing alone that might indicate that she had used the words "in my will" in a limited sense, and without any reference to the codicils thereto; and that the trust provision likewise referred to the share of William G. Crumlish in the residue of the estate. But the first phrase of the same sentence of the second codicil also directs the sale of certain articles of furniture "which I left in my will" to certain specified persons. These articles were in fact bequeathed in the first codicil. This would seem to indicate that the words "in my will" were used in a broad sense, and included the subsequent conditions to the original testamentary instrument. Viewed from that standpoint, the one-half share of William G. Crumlish in the fund in question must, therefore, be held in trust.

Prior to her death, the testatrix had made a deposit in the Wilmington Savings Fund Society in her name "for George T. Ogle." It is not denied that such a deposit would be equivalent to one in the name of "Ella C. Brady Deakyne, in trust, for George T. Ogle," and the case was argued on that theory. See 65 *C.J.* 288. On June 28th, 1938, it amounted to $59.10.

The second codicil to the will of Mrs. Deakyne provides:

"The money which is in the Wilmington Savings Fund under the name of George Thomas Ogle, son of George and Ruth Ogle is to re-

main in bank until he is twenty-one and is to be turned over to him at that time, with interest."

There was no other deposit in the Wilmington Savings Fund Society in the name of George Thomas Ogle, and it is conceded that the deposit made by Ella C. Brady Deakyne, in her name for him, is the account referred to in the codicil to her will. The only other fact that appears is that George Thomas Ogle is a minor.

The transfer of property to a trustee is not essential to the creation of a valid trust of that property. The owner may make himself a trustee for another by a clear and unequivocal declaration to that effect; but whether such a declaration was intended to create a trust is always a question of fact, depending upon the circumstances. *Jones v. Bodley,* 26 *Del. Ch.* 218, 27 *A.* 2d 84; 3 *R.C.L.* 715. In determining that question, the fact that the gift involved in the declaration was without consideration is unimportant. *Jones v. Bodley, supra.*

While of great importance in determining the real intent of the alleged declarant, notice to the supposed beneficiary is not usually regarded as an essential element in the creation of such trusts. *Jones v. Bodley, supra; Scott on Trusts* § 24.2.

Applying these principles, some courts have held that even in the absence of any corroborative evidence, an irrevocable declaration of trust will be presumed when a deposit is made in a savings account by a person "in trust" for another. *Milholland v. Whalen,* 89 *Md.* 212, 43 *A.* 43, 44 *L.R.A.* 205; *Rose v. Osborne,* 133 *Me.* 497, 180 *A.* 315; 1 *Scott on Trusts,* § 58.1; 1 *Ann. Cas.* 905 *note.* Others have held that no declaration of trust, of any nature, can be inferred from the mere opening of such an account, without other evidence of intent. *Hickey v. Kahl,* 129 *N.J. Eq.* 233, 19 *A.* 2d 33; *Mulloy v. Charlestown, etc., Savings Bank,* 285 *Mass.* 101, 188 *N.E.* 608; 1 *Scott on Trusts,* § 58.1[1] But most courts have

---

[1] See *In re Caldwell's Est.,* 8 *Del. Ch.* 358, 68 *A.* 525.

approached the question from a practical standpoint, and have held that when a savings account is opened by one person in trust for another, and no explanatory evidence of intent appears, the inference will be drawn that a trust is intended, though revocable at the will of the depositor. *Matter of Totten,* 179, *N.Y.* 112, 71 *N.E.* 748, 70 *L.R.A.* 711, 1 *Ann. Cas.* 900; *In re Scanlon's Estate,* 313 *Pa.* 424, 169 *A.* 106; 1 *Scott on Trusts,* §58.1; *Restat. Law of Trusts,* § 58; 2 *Paton's Digest* 1710. This seems to be the preferable rule. While the trust is of a tentative nature, in the sense that its continued existence depends upon the depositor, its creation does not depend upon his death. *Hickey v. Kahl, supra.*

But it may be revoked in whole, or in part, by withdrawal of funds, or otherwise. *Matter of Slobiansky's Estate,* 152 *Misc.* 232, 273 *N.Y.S.* 869; 2 *Paton's Digest,* 1710. In the absence of any such apparent intent on the depositor's death any balance in the account belongs to the named beneficiary. *Matter of Totten, supra; In re Scanlon's Estate, supra;* 1 *Scott on Trusts,* § 58.4; 2 *Paton's Digest* 1715. A mere unconditional bequest of the fund to the apparent beneficiary would seem to corroborate the conclusion that a trust for his benefit had been intended. *Wait v. Society, etc.,* 68 *Misc.* 245, 123 *N.Y.S.* 637. But a bequest to George Thomas Ogle of the same fund of which he was the apparent beneficiary with the express direction that it be paid to him when he should arrive at the age of twenty-one years, is inconsistent with the prior conditional gift and shows an intent to revoke it. *Matter of Beagan's Estate,* 112 *Misc.* 292, 183 *N.Y.S.* 941; *Matter of Mannix' Estate,* 147 *Misc.* 479, 264 *N.Y.S.* 24; 2 *Paton's Digest* 1715.

In disposing of this fund, the trustee is, therefore, governed by the provisions of the will of Ella C. Brady Deakyne.

*Section* 2271 *of the Revised Code of* 1935 is not pertinent in determining whether a trust exists; it was merely intended to protect the Bank in which the deposit was made in

paying the fund under certain circumstances. 1 *Scott on Trusts*, § 58.3.

A decree will be entered in accordance with this opinion.

Note: Reversed in part. See *Crumlish v. Delaware Trust Co., post* p. 374.