THE EXECUTIVE COUNCIL OF THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF DELAWARE, INC., a Delaware corporation,
Plaintiff,

*vs.*

ROBERT A. MOSS, et al.,
Defendants.

*New Castle, June 30, 1967.*

*William S. Potter* and *Richard L. McMahon,* of Berl, Potter & Anderson, Wilmington, for plaintiff.

*Donald C. Taylor* and *Robert W. Crowe,* of Cooch & Taylor, Wilmington, for defendants (except the Attorney General).

DUFFY, Chancellor: In this case judicial instructions are sought as to a bequest of $500,000 under the will of Ann B. duPont. Plaintiff is The Executive Council of the Protestant Episcopal Church in the Diocese of Delaware, Inc., a Delaware corporation ("Council"). Defendants are the Standing Committee of the Protestant Episcopal Church of the Diocese of Delaware and individual members of the Committee[1] ("Committee").

A statement of facts was settled upon, and thereafter both the Council and the Committee moved for summary judgment. This is the decision thereon.

I

In 1952 Ann B. duPont, then a Delaware resident and the widow of Alexis Felix duPont, gave her home in Rehoboth Beach to the

1. The Attorney General is a defendant and in his answer contended that Mrs. duPont's bequest created a charitable trust but thereafter advised the Court that he had decided not to take a position on the issues.

Council. The deed conveyed the property, now known as "Memorial House," in fee simple without recital of purpose or conditions. As to the purpose of the gift, the then Bishop of the Diocese, Arthur R. McKinstry, states that:

> "* * * Mrs. duPont agreed to convey the Rehoboth house to the Diocese, to be used by me and others for a conference center. * * *"

In 1963 Mrs. duPont died testate and a resident of New York. She left a will dated January 20, 1958 which provides in part:

> "I give and bequeath to The Executive Council of the Protestant Episcopal Church of the Diocese of Delaware the sum of Five hundred thousand Dollars ($500,000) for the maintenance and care of, and the operations carried on in the property known as 'Memorial House', at 56 Oak Avenue, Rehoboth, Delaware, which I have heretofore given to said Executive Council, the expenditures for such maintenance, care and operation to be as the Bishop and Standing Committee of said Diocese shall determine in their discretion."

The will was probated in New York, and on October 11, 1963 the sum of $500,000 was distributed to the Council.

The Memorial House has been and is being used by the Diocese for a conference center. The principal of the legacy, which has not been invaded, produces an average yearly income of $18,000, of which some $13,000 is spent for operations in and the care of Memorial House. The balance of income has been accumulated.

The Council is charged by the *Constitution and Canons of the Diocese of Delaware* with responsibility for furthering the objectives of the Church and of serving as its principal executive body. Article X of the Constitution provides:

> "The Executive Council of the Diocese may be incorporated for the purpose of taking charge of the unification, development and prosecution of the missionary work, church extension, religious education and Christian social service of the Diocese and such other matters as may be committed to it by the Diocese."

Pursuant to this provision, the Council was incorporated in Delaware as a non-profit, non-stock corporation whose governing body consists of the Bishop and eighteen members elected by the Convention of the Diocese. Its powers are restricted by its charter to the above-stated religious purposes.

The Council has delivered the bequest to the Trustees of the Protestant Episcopal Church of the Diocese of Delaware for investment along with other Church funds. The Trustees are charged with the administration of many of the fiscal affairs of the Church. The Trustees pay income from the bequest to the Council for "disbursement according to the terms of the will."

The Committee is empowered to deal only with ecclesiastical matters as distinguished from temporal matters. For this reason the Committee, by appropriate resolution, has delegated its responsibilities under the will to the Bishop and the Council.

Except for the documents to which I have referred, a statement by Bishop McKinstry provides the only record indication of Mrs. duPont's intentions in making the bequest. He says:

"When Mrs. duPont agreed to convey the Rehoboth house to the Diocese, to be used by me—and others for a conference center—I raised the question of repairs and maintenance with her. I said that I would want the property kept up in accordance with her standards. I asked about the possibility of an endowment; the income going to repairs and maintenance. Mrs. duPont replied that she felt that she could do nothing at that time. However, she promised to include something in her will for this purpose.

"When I retired—Bishop Mosley spoke to me about the need of money to use for repairs and maintenance. I told him what Mrs. duPont had said—about leaving a gift in her will. The Bishop was hard pressed for funds, then! * * * Again— she said to me 'I have left a sum of money in my will for the repairs and maintenance of Memorial House'."

In a 1954 will Mrs. duPont left a bequest of $100,000 for these purposes and that sum was increased to $500,000, first by a 1957 codicil and again by the 1958 will.

\*　　\*　　\*

As argued in the briefs, the bequest, analytically, falls into one of three possible categories: a gift in trust, an absolute gift, or a gift on condition.

## II

Since Mrs. duPont died a resident of New York and the bequest was distributed to a Delaware corporation and is to be administered here, choice of law is a threshold question.

■ The validity and nature of a bequest are determined by the law of a testator's domicile,[2] but the administration and the enforcement of any conditions attached to that bequest are governed by the law of the state where the bequest is administered, *i. e.*, where the conditions must be enforced.[3] In *Equitable Trust Co. v. Ward,* 29 *Del.Ch.* 206, 48 *A.2d* 519 (1946), the Chancellor commented on both facets of that matter, saying (at 48 *A.2d* 526):

> "The formal validity of a will, disposing of personal property, is always governed by the law of the testator's domicile at the time of his death. * * * Unless a contrary intent appears, the essential validity of a bequest of personal property, whether in trust or otherwise, is governed by the same rule."

And as to the administration question, he said:

> "* * * Ordinarily, in such cases the question of state policy is only a matter of legitimate interest in the jurisdiction in which the bequest is to be held and administered."

By this test, then, the nature of the bequest is to be determined by looking to the law of New York, and once that is settled upon, the use of the bequest and how it is to be administered is to be determined by the law of Delaware.

## III

■ It is abundantly clear that the bequest does not create a trust. While formal and technical trust language is not essential for the creation of a trust, the point is that neither words nor phrases of that kind appear in the bequest to the Council. And yet Mr. duPont's will and a codicil run to 23 pages, all of which show careful professional draftsmanship, and these include trusts created by the use of

---

2. 16 *Am.Jur.2d, Conflict of Laws,* § 67; 2 *Beale, Conflict of Laws,* § 306.2.

3. 2 *Beale, Conflict of Laws,* § 297.2.

formal language and style. In short, I am satisfied that Mrs. duPont, with the help of her advisers, knew how to create a trust of the bequest to the Council, had she desired to do so.

From a technical point of view, it is established New York law that a trust does not arise from a gift wherein the trustee and the beneficiary are one and the same entity. *In re Mauser's Estate, Sur.,* 151 *N.Y.S.2d* 993 (1956); *In re Heffron's Will,* 2 *A.D.2d* 466, 156 *N.Y.S.2d* 779 (1956). Here the bequest is to the Council to be applied by it for the maintenance and care of (and the operations carried on in) Memorial House which it owns. Hence, it is the beneficial as well as the legal owner of the fund. Under *Mauser* that precludes the creation of a trust. Compare *Fulweiler v. Spruance, Del.Ch.,* 222 *A.2d* 555 (1966).

It is also worth noting that decisions in New York clearly reflect a strong prejudice by the courts of that State against finding that a charitable gift creates a trust.[4] *St. Joseph's Hospital v. Bennett,* 281 *N.Y.* 115, 22 *N.E.2d* 305, 307, 130 *A.L.R.* 1092 (1939). See also *Wetmore v. Parker,* 52 *N.Y.* 450 (1873).

Tested, then, by the law of New York, and measured by the explicit language here involved, it is clear that Mrs. duPont's bequest to the Council was not given upon a trust as the civil law uses that term.

## IV

I turn now to the question as to whether Mrs. duPont's bequest was an absolute gift, or a gift on condition. It is argued by the Council that she did not intend to create a defeasible interest or conditional gift (except as limited by its general corporate purposes). The Committee contends that she did. The issue is thus drawn over whether the gift is with or without conditions. And, as indicated above, since this question is directed toward the essential nature of the gift, it must be examined under New York law.

The Council argues that the bequest is $500,000 and that the language which follows is a mere expression of purpose. It points out

---

4. This arose out of judicial law which had invalidated certain charitable trusts on the ground that they violated the rule against perpetuities. *Holmes v. Mead,* 52 *N.Y.* 332 (1873). See 130 *A.L.R.* 1101, 1110.

that Mrs. duPont knew the Council owned the Rehoboth property outright, and that it could dispose of such property at will; and, knowing this, Mrs. duPont did not provide in any way for a gift over and she must therefore have intended to make the gift an absolute one.

■■■ The New York opinions I have read make it quite clear that under established law in that State an instrument will rarely be construed as imposing a condition unless there is a provision for reverter of the property. Thus in *In re Saulpaugh's Will*, 15 *Misc.2d* 856, 180 *N.Y.S.2d* 623 (1958), the Court held that a devise of realty "to be used as a Veteran's Home" was precatory and the recipient took a gift absolute in the absence of a provision for reentry or reverter. The approach of the New York Courts is perhaps best illustrated by the following language from IV *Scott on Trusts* (2 *ed.*) § 401.2 which is quoted in a number of the cases:

> "The mere fact that it is provided in the instrument that the property shall be applied 'forever' to certain charitable purposes or for such purposes 'and no other purposes', does not manifest an intention on the part of the testator to create a condition. Even though it is provided in the instrument that the property is given 'upon conditions' that it is to be applied to certain purposes, this does not necessarily manifest an intention to create a condition. Unless there is a provision for the reverter of the property the instrument will rarely be construed as imposing a condition."

See, for example, *Smith v. Incorporated Village of Patchogue, Sup.*, 129 *N.Y.S.2d* 422, *aff'd* 285 *App. Div.* 1190, 141 *N.Y.S.2d* 244 (1955).

In Mrs. duPont's bequest to the Council there is not, expressly or indeed by implication of any kind, a provision for reverter or forfeiture of the fund under any condition. And the surrounding circumstances are likewise barren of any indicated intent, however remote, to have the bequest or its residue recaptured for the benefit of any other beneficiary. Hence, it is quite clear that under New York law the bequest to the Council is absolute.

To say this is to hold that the gift is not a defeasible one. It is not to say that the gift is without limitation of any kind and that the Council is free to apply it for its general corporate purposes. On the

contrary, both the New York and Delaware decisions enforce the "purpose" provisions in a gift such as this.

In *St. Joseph's Hospital v. Bennett, supra,* the Court held that a bequest "to be held as an endowment fund and the income used for the ordinary expenses of maintenance" did not create a trust but "The gift and the statement of its purpose cannot be separated, one from the other. * * * Though these words may not avail to create a legal trust, they furnish a direction and restriction upon the use of the gift." The Court concluded that the charitable corporation could not receive a gift made for one purpose and use it for another (unless the Court applying *cy pres,* so commands). *In re Mauser's Estate, supra,* is to the same effect. And decisions in this State implicitly recognize that gifts to a charitable corporation can be made upon express limitations and conditions. See, for example, *Denckla v. Independence Foundation,* 41 *Del.Ch.* 247, 193 *A.2d* 538 (1963); and *Hanover St. Presbyterian Church v. Buckson, Del.Ch.* 210 *A.2d* 190 (1965), in which Chancellor Seitz said:

"There is no question in Delaware of the right or power of a person to leave money to a charitable corporation outright, as a gift subject to a condition, or in trust * * *."

Compare *Delaware Trust Co. v. FitzMaurice,* 27 *Del.Ch.* 101, 31 *A.2d* 383 (1943). What purposes or conditions, if any, are applicable here?

### V

We seek what Page has called the testatrix's "subjective intent". 4 *Page on Wills* § 30.1.

■ In the bequest Mrs. duPont gave a fixed amount, $500,000. to the Council. And she followed this by saying, "for the maintenance and care of, and the operations carried on in the property known as 'Memorial House'." The purpose for the bequest was thus spelled out: maintenance, care and operations. And the property to which this purpose was directed was specifically identified: the Rehoboth property. And it was further identified by its name (Memorial House), by its address (56 Oak Avenue), and by identifying it as property she had given. And thereafter Mrs. duPont indicated again

by repetition the objective she had in making the gift: maintenance, care and operations. In the light of this language, which in my judgment made her purpose crystal clear as far as it went, the Court cannot say that the gift was merely for the Council's general purposes and was unrelated to the Rehoboth property. As in *St. Joseph's Hospital,* the words furnish a direction and purpose as to the use of the gift. Compare *Trustees of Peninsula Ann. Conf. v. New York·E. A. Con., Del.Ch.,* 211 *A.2d* 588 (1965).

As thus specified in Mrs. duPont's will, the purposes of the bequest are broad, indeed. The "sum" may be used for the "maintenance and care of, and the operations carried on in, the property known as 'Memorial House'." Within the four corners of this language there are no restrictions of any kind. While Mrs. duPont may have wanted to provide for maintenance and care of the property as long as the Diocese owned it, she did not so specify in this bequest.

I recognize that Mrs. duPont had been asked to maintain "Memorial House" and she had been asked about the possibility of an endowment. She promised to include something in her will for this purpose and later said that she had provided in that way "for the repairs and maintenance of Memorial House." But her will actually includes two significant additions to this language. First, she added "operations carried on in" Memorial House to the purpose of the gift. And, second, she directed that expenditures for all purposes be made at the discretion of the Bishop and the Standing Committee.

I therefore conclude that while the preservation of the bequest to provide for repairs and maintenance of the property while the Council owns it may be highly desirable, Mrs. duPont did not make this either a condition of her gift or a directed application of it. Instead, she left this entire matter to the good judgment of the Bishop and the Standing Committee as they "determine in their discretion."

It follows, then, that the bequest to the Council is absolute but it must be applied by the Council for maintenance and care of, and the operations carried on in, Memorial House; the Bishop and the Standing Committee determine, in their discretion, how and when and in what way such expenditures are made.

## VI

As part of the request for instructions, the parties have by stipulation asked seventeen specific questions, the answers to sixteen of which are provided in an unpublished addendum to this opinion. Such answers are, of course, based in large measure upon the formulations and conclusions recited herein.

As to the seventeenth question, it reads as follows:

"If the property known as the 'Memorial House' should be sold, what would be the duties and obligations of the parties hereto in regard to the fund received by Plaintiff under the terms of the Will of Ann B. duPont?"

I decline to answer this question at this time because, on the present record, it is an academic inquiry and may remain so. There is nothing here to indicate that the property is to be sold or, indeed, that any consideration is being given to its sale. In addition, it is also probable that *cy pres* has some application to the answer, and that doctrine has not been briefed by counsel.